ORIGINAL

FILED

JAN 31 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2    Including Professional Corporations
   NEIL A. SMITH, Cal. Bar No. 63777
3  NATHANIEL BRUNO, Cal. Bar No. 228118
   Four Embarcadero Center, Seventeenth Floor
4  San Francisco, California 94111
   Telephone:    415-434-9100
5  Facsimile:    415-434-3947
   E-mail:       nsmith@sheppardmullin.com
6  E-mail:       nbruno@sheppardmullin.com

7  Attorneys for Plaintiff NETBULA, LLC

8                 UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

HRL

10

| | |
|---|---|
| NETBULA, LLC., a Delaware limited liability company, | Case No. **C 06 0711** |
| Plaintiff, | COMPLAINT FOR COMPENSATORY DAMAGES, DISGORGEMENT OF PROFITS, INJUNCTIVE RELIEF, RESTITUTION, EXEMPLARY DAMAGES, AND ATTORNEYS' FEES AND COSTS FOR: |
| v. | |
| BINDVIEW DEVELOPMENT CORPORATION, a Texas corporation; SYMANTEC CORPORATION, a Delaware corporation; ERIC J. PULASKI, an individual; and DOES 1-10, inclusive, | 1) Direct, Contributory, and Vicarious Copyright Infringement Under 17 U.S.C. Section 101 *et seq.*; |
| Defendants. | 2) Intentional Fraud Under California Civil Code Section 1709; |
| | 3) Breach of Contract; |
| | 4) Statutory Unfair Competition Under California Business & Professions Code Section 17200 *et seq.*; and |
| | 5) Equitable Accounting and Imposition of a Constructive Trust; |
| | and |
| | CERTIFICATION OF INTERESTED PARTIES OR PERSONS |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

W02-SF:6NB1\61482489.3                                                  COMPLAINT

1        **COMPLAINT**

2

3        Plaintiff NETBULA, LLC ("Netbula" or "Plaintiff") complains and alleges against

4   defendants BINDVIEW DEVELOPMENT CORPORATION, SYMANTEC CORPORATION,

5   and ERIC J. PULASKI, (collectively, "Defendants") as follows:

6

7        **INTRODUCTION**

8

9        1.      Plaintiff Netbula develops computer software products. The functionality

10  of Netbula's products depends upon a uniquely-created and copyrighted software file (the

11  "pwrpc32.dll" file). Netbula offers licenses to software products that contain this all-important

12  copyrighted file, in exchange for the payment of royalties. Such royalties are the heart of

13  Netbula's business revenues. Unfortunately, Defendants in this action have collaborated in a

14  scheme to willfully infringe Netbula's copyrighted software technology by obtaining said

15  technology and including it in Defendants' own software products without authorization and

16  without paying Netbula the appropriate royalties. Defendants have further defrauded Netbula by

17  making knowingly false representations regarding the number and scope of unauthorized copies

18  they have distributed containing Netbula's copyrighted software technology. Defendants also

19  breached a valid and enforceable contract with Netbula in which they promised to supply Netbula

20  with accurate information regarding the distribution of Netbula's software and to pay Netbula a

21  specific sum (Netbula's standard license fee) for each copy of the software that was distributed

22  without Netbula's authorization. All of these actions by Defendants amount to unlawful, unfair,

23  and/or fraudulent business practices, and Defendants have profited from all of their unlawful

24  actions to the great financial detriment of Plaintiff Netbula.

25

26       **JURISDICTION**

27       2.      This Court has subject matter jurisdiction over this matter pursuant to: (1)

28  28 U.S.C. §§ 1331 and 1338(a), as this action arises out of the laws of the United States of

-1-

1   America (in particular, the first claim for copyright infringement founded upon the Copyright Act

2   at 17 U.S.C. § 101 *et seq*.); (2) 28 U.S.C. 1338(b), as the fourth claim for unfair competition is

3   joined with a substantial and related copyright claim; and (3) 28 U.S.C. § 1367 providing for

4   supplemental jurisdiction, because the second, third, fourth, and fifth claims are so related to the

5   first claim for relief that the claims form part of the same case or controversy under Article III of

6   the United States Constitution.

7

8           3.      This Court has personal jurisdiction over Defendants in this action and

9   venue is proper in this judicial district under 28 U.S.C. § 1391(b) because, as alleged further

10  below:  (a) at least one of the Defendants resides in the State of California and in this judicial

11  district; (b) Defendants, and each of them, have intentionally engaged in substantial business and

12  related communications within this forum amounting to sufficient minimum contacts, including,

13  but not limited to, the sale of their offending products and/or services into California and, on

14  information and belief, into this judicial district; (c) the harm caused to Plaintiff by the acts and

15  omissions of Defendants was targeted by Defendants at Plaintiff and designed to impact Plaintiff,

16  which has its principal place of business located in this judicial district; and (d) a substantial part

17  of the acts or omissions giving rise to the asserted claims occurred or had effects in this judicial

18  district.  Furthermore, on information and belief, Defendants have infringed Plaintiff's copyrights

19  and unfairly competed with Plaintiff via the Internet and otherwise, in every jurisdiction of the

20  United States, including this judicial district.

21

22                          **INTRADISTRICT ASSIGNMENT**

23

24          4.      Because this action is an Intellectual Property Action as specified in

25  Northern District of California Civil L.R. 3-2(c), it is to be assigned on a district-wide basis.

26

27

28

W02-SF:6NB1\61482489.3                                                        COMPLAINT

**THE PARTIES**

5.     Plaintiff NETBULA, LLC ("Netbula" or "Plaintiff"), is a Delaware limited liability company with its principal place of business located at 2777 Alvarado Street, San Leandro, CA, 94577, within this judicial district.

6.     On information and belief, defendant BINDVIEW DEVELOPMENT CORPORATION ("BindView") is a Texas corporation with its principal place of business located at 5151 San Felipe, 25th Floor, Houston, TX, 77056, and is now wholly-owned by Symantec Corporation effective as of the approximate date of January 6, 2006.

7.     On information and belief, defendant SYMANTEC CORPORATION ("Symantec") is a Delaware Corporation with its principal place of business located at 20300 Stevens Creek Boulevard, Cupertino, CA, 95014 within this judicial district, which finalized its complete acquisition of BindView for approximately $209 million on or about January 6, 2006.

8.     On information and belief, defendant Eric J. Pulaski is the Chairman of the Board of Directors, President, and Chief Executive Officer of BindView.

9.     Plaintiff does not know the true names and capacities, whether individual, corporate, associate, or otherwise, of defendant DOES 1 through 10, inclusive. Plaintiff is informed and believes, and based upon such information and belief alleges, that each fictitious defendant was in some way responsible for, participated in, or contributed to the matters and things of which Plaintiff complains herein, and in some fashion, has legal responsibility therefore. Certain of defendant DOES 1 through 10 are customers and/or potential customers of the other named Defendants. When the exact nature and identity of such fictitious defendants and their responsibility for participation and contribution to the matters and things herein alleged is ascertained by Plaintiff, Plaintiff will amend this Complaint to set forth the same.

-3-

**FACTUAL DETAILS**

**The Parties' Business Endeavors**

10.     Plaintiff Netbula develops premium quality computer software products. Particularly, Netbula is an industry leader in the development of innovations in "Remote Procedure Call" ("RPC") technology.  RPC technology allows a computer on a local system to communicate with another computer on a remote system over a network.  Netbula's main product line is its "PowerRPC" echelon, which is available for use in both Microsoft Windows and UNIX operating system environments.

11.     Netbula's business is founded largely upon its sophisticated ability to create new software products featuring advancements and solutions in RPC technology, and to license those products for profit.  Numerous Fortune 500® companies are Netbula customers who make use of, and benefit from, Netbula's "PowerRPC" products in connection with critical financial, healthcare, and telecommunications services.

12.     Netbula's RPC software for Microsoft Windows contains two parts:  (1) the "Software Development Kit" ("SDK") that consists of the software tools which allow programmers to create applications based on Netbula RPC technology, for which the "pwrpc32.dll" and "rpcgen.exe" files are the most important; and (2) the "Runtime Library" that consists of files providing the core RPC functionality, for which the "pwrpc32.d11" file is, again, most important.  The "pwrpc32.d11" file is a unique and original copyrighted creation of Netbula, *and without the "pwrpc32.d11" file, Netbula RPC applications cannot run.*  The "pwrpc32.dll" file is therefore a closely-guarded intellectual property right of Netbula.

13.     Netbula holds a federal copyright registration for its main product, "PowerRPC" (Registration No. TX 6-211-063, registered October 18, 2005), a copy of which is attached hereto as Exhibit A.  "PowerRPC" contains the key "pwrpc32.d11" file developed by Netbula.

-4-

14.     A Netbula product purchaser must buy one type of license (an "SDK" license) for each computer programmer who will use the "rpcgen.exe" and "pwrpc32.d11" files to develop RPC applications.  A Netbula product purchaser must also buy a separate license for the right to copy Netbula's Runtime Library files, also including the all-important "pwrpc32.d11" file.  The license for the right to copy the Runtime Library to a single computer is called a "runtime license."  Each SDK license and runtime license is only granted for a single computer and might only be granted for use in one specific operating system environment, such as Windows 2000 but not Windows XP, depending upon the specific agreement between Netbula and the licensee.

15.     Netbula collects a royalty for each copy of its SDK license and each copy of its runtime license.  Both the SDK and runtime licenses include the right to use Netbula's key "pwrpc32.d11" file.  These licenses may be purchased in two ways.  First, licenses may be purchased as a block of individual units that are each usable on a single computer under a particular operating system (a "Limited Distribution License").  Under this first licensing model, Netbula customers purchase a fixed number of licenses and must replenish them when the pool of licenses is used up.  Second, a customer can copy and distribute Netbula's licenses on its own.  Under this second licensing model, the customer must agree to provide Netbula with quarterly reports detailing the exact number of individual licenses distributed, and to pay Netbula a royalty for each license.  Both licensing models are standard in the software industry, and both depend upon the good faith of Netbula's customers (*i.e.*, licensees).  Accurate reporting is crucial because Netbula's business and profitability depend largely upon the royalties it receives from licensing copies of its RPC software technologies that make use of the all-important "pwrpc32.d11" file.  Netbula's licenses are not transferable.

16.     On information and belief, Defendant BindView develops and sells computer software for the purpose of protecting and securing computer systems, applications, and networks from unauthorized access or tampering.  On further information and belief, Defendant

-5-

1 | Eric J. Pulaski serves as BindView's Chairman of the Board of Directors, President, and Chief
2 | Executive Officer.

3

4 | 17.  On information and belief, Defendant Symantec develops and sells
5 | computer software products designed to help users manage their information technology and
6 | comply with various government regulations regarding technology security.  On further
7 | information and belief, Symantec acquired BindView in an attempt to combine the force of its
8 | agent-based compliance software technologies with BindView's agent-less compliance software
9 | technologies, the functionality of which depends upon Plaintiff Netbula's copyrighted software.
10 | On further information and belief, Symantec, as the acquirer of BindView, is fully responsible for
11 | legal claims brought against BindView and/or BindView's managing agents.

12

13 | **BindView's Acquisition of Netbula's RPC Technology**

14

15 | 18.  In July of 1998, a company named Netect, Inc. purchased one Netbula RPC
16 | SDK license and one Netbula RPC Limited Distribution License for Netbula's Runtime Library
17 | technology for use with machines running Windows NT and Windows 95.  Netect, Inc. had never
18 | made royalty reports to Netbula or paid Netbula any royalties which would have indicated that
19 | Netect, Inc. was copying and distributing Netbula's RPC technology and "pwrpc32.dll" file, nor
20 | had Netect, Inc. purchased new licenses for upgraded versions of Microsoft Windows beyond the
21 | Windows 95 and Windows NT operating system.  Netbula simply assumed that Netect, Inc. had
22 | gone out of business or was not using or distributing Netbula's RPC software technology.

23

24 | 19.  However, on information and belief, in 1998, Netect, Inc. had developed a
25 | software product named "HackerShield."  On information and belief, "HackerShield" finds and
26 | closes security holes that computer hackers use to break into servers, workstations, and other
27 | network devices.  On further information and belief, "HackerShield" was Netect, Inc.'s only
28 | software product.  On information and belief, *"HackerShield" included the all-important*

W02-SF:6NB1\61482489.3          COMPLAINT

1   *"pwrpc32.dll" Netbula RPC technology file from Netbula's RPC software, which was subject to*

2   *Netbula's license terms.*  On information and belief, the "pwrpc32.dll" file was acquired by

3   Netect, Inc. through the individual SDK license and/or individual runtime license of Netbula's

4   RPC technology that Netect, Inc. had purchased.  At the time, Netbula was unaware that Netect,

5   Inc.'s "HackerShield" program incorporated Netbula's RPC software technology and

6   "pwrpc32.d11" file and Netbula had not authorized such usage by Netect, Inc. on Windows 2000

7   and above.

8

9          20.     On information and belief, Netect, Inc. was acquired by BindView in

10  approximately March of 1999 for approximately $30 million.  Neither Netect, Inc. nor BindView

11  notified Netbula of the acquisition.  *On information and belief, when BindView acquired Netect,*

12  *Inc., BindView began using, copying, and distributing the Netbula RPC software technology*

13  *containing Netbula's all-important "pwrpc32.dll" file which Netect, Inc. had used in its*

14  *"HackerShield" program.*  However, Netbula never received a single royalty report from

15  BindView in the six-plus years after it acquired Netect, Inc., even though BindView continued to

16  develop multiple programs and products using Netbula's RPC software technology containing the

17  "pwrpc32.dll" file.  Therefore, any copies made of Netbula's RPC software technology and

18  "pwrpc32.d11" file, any use of same in BindView's software products, and any use of Netbula's

19  RPC technology on operating platforms other than Windows NT and Windows 95 (the only

20  platforms for which Netect, Inc. had originally licensed it), was unauthorized and done without

21  payment of the royalties rightfully owing from BindView to Netbula.

22

23          **BindView's Propagation of Software Programs Using Netbula's RPC Technology**

24

25          21.     After acquiring Netect, Inc., BindView integrated the "HackerShield"

26  software into BindView's existing software product portfolio, and has since propagated it through

27  numerous generations of its software products, thus multiplying the unauthorized uses of Netbula's

28  RPC technology and "pwrpc32.d11" file which was originally embedded in the "HackerShield"

-7-

1  program without Netbula's knowledge or authorization. Upon information and belief, BindView

2  initially continued distributing software products under the "HackerShield" name. But, on further

3  information and belief, on or before October 18, 2000, BindView re-named "HackerShield" to

4  "bv-Control for Internet Security" ("bv-CIS"). The "bv-Control for Internet Security" program is

5  sold individually and as part of BindView's "bv-Control" Suite. *Importantly, the "bv-Control for*

6  *Internet Security" software program, and its predecessor, "HackerShield," contain the*

7  *"pwrpc32.dll" Netbula RPC file, the core of Netbula's RPC technology.* On information and

8  belief, BindView has continued to develop numerous new "bv-Control" product lines, including

9  no less than seven major generations of the "HackerShield"/"bv-CIS" software and the "bv-

10 Control Security Management Suite." On further information and belief, BindView has instituted

11 many more minor revisions to these software products over the past approximately six years,

12 further multiplying its unauthorized use and copying of Netbula's RPC software technology. All

13 of these BindView products make unauthorized use of Netbula's copyrighted RPC software

14 technology including, most importantly, its special "pwrpc32.d11" file.

15

16          22.     On Oct 18, 2000, BindView publicly claimed it had shipped more than 10

17 million licenses of BindView solutions software to about 5000 companies. On June 11, 2001,

18 BindView publicly announced it had shipped 20 million licenses of BindView solutions software

19 to about 5000 companies. According to BindView's 2003 annual 10-K filing report with the

20 United States Securities and Exchange Commission, revenues from BindView's products for

21 Microsoft-based platforms totaled $46.6 million, while sales of BindView's security-focused "bv-

22 Control" product line accounted for approximately 83% of its license revenue in both 2003 and

23 2002. According to BindView's 2004 10K filing, sales of BindView's security-focused "bv-

24 Control" product line accounted for approximately 83% of its license revenue in both 2004 and

25 2003. On information and belief, BindView has an annual revenue of about $70 million, and

26 approximately 83% of its license revenue comes from the "bv-Control" products, *which contain*

27 *Netbula's copyrighted RPC technology*. BindView has also publicly claimed that its revenues

28 related to "bv-Control" products (which contain Netbula's copyrighted RPC technology) totaled

-8-

1   $54.7 million, $55.2 million, and $61.2 million for the years ending December 31, 2003, 2002,

2   and 2001, respectively.

3

4          23.     Thus, on information and belief, BindView has been using Netbula's RPC

5   software technology (and Netbula's core "pwrpc32.d11" file contained in that software

6   technology) in a significant amount and in a substantial number of products sold and distributed

7   for at least six years, and has obtained millions of dollars in revenue flowing from its unauthorized

8   use and copying without a license (or licenses) and without paying Netbula any royalties.

9

10          24.     On information and belief, further ways in which BindView distributed

11  Netbula's RPC technology without authorization include: (1) BindView issued "site licenses"

12  allowing unlimited installation and copying of the "HackerShield" and "bv-Control" programs

13  (which contained Netbula's RPC technology and "pwrpc32.dll" file) to institutions like the

14  Virginia Polytechnic Institute and State University and other BindView customers, resulting in

15  unknown quantities of unauthorized copying by and through those customers; (2) Both Netect,

16  Inc. and BindView put "HackerShield" on their Web sites for unlimited free download, allowing

17  the free and unlimited use of the "HackerShield" program (and Netbula's underlying RPC software

18  technology and "pwrpc32.dll" file); (3) BindView issued press releases inviting people to

19  download "HackerShield" and "bv-CIS" software containing Netbula's underlying RPC software

20  technology and "pwrpc32.dll" file; (4) BindView offered free copies of the "HackerShield"

21  program (which contained Netbula's RPC technology "pwrpc32.dll" file) to approximately 1,500

22  Black Hat Security Conference attendees; (5) BindView held many training classes around the

23  world for using its "bv-Control" software; (6) BindView offered free evaluation CDs containing

24  "bv-Control for Internet Security" (which contained Netbula's RPC technology) to potential

25  customers through its Web site; and (7) BindView made copies of Netbula's SDK license

26  containing the "pwrpc32.dll" file for use by multiple BindView programmers in India (BindView's

27  new geographical software-development nexus) without authorization.  Netbula has not received

28

-9-

1 || any royalties or other compensation for these numerous copies and distributions of its RPC

2 || technology and "pwrpc32.dll" file.

3

4 ||        25.     BindView touted HackerShield and "bv-CIS's" ability to detect the SANS

5 || Top 10 security threats as a key advantage to its software in many of its press releases, conference

6 || presentations, and marketing materials.  Upon information and belief, at least three of the top ten

7 || security threats were detected by using Netbula's RPC technology, further demonstrating the

8 || quality of Netbula's RPC technology and its essentiality to BindView's profitable "bv-CIS"

9 || products.

10

11 ||        26.     On information and belief, users of "HackerShield" and "bv-Control"

12 || products can obtain updates to the software by: (1) downloading updates and installing them

13 || manually; or (2) using a BindView-assigned e-mail account and password to receive and enter

14 || updates to the BindView programs.  On further information and belief, BindView has a team of

15 || security experts (known as the "RAZOR" team) who keep watch for new security threats and send

16 || updates to "HackerShield" and "bv-Control" software to customers via email.  On September 26,

17 || 2005, BindView released "bv-Control for Internet Security" version 8.1.  That press release

18 || claimed that BindView's RAZOR Research Team keeps "bv-Control for Internet Security"

19 || customers up-to-date with critical software patches, checks for new threats, and continuously

20 || provides updates against the latest security threats.  On information and belief, BindView derives

21 || support-related revenue for its "bv-CIS" products in connection with such updates.

22

23 ||     **Netbula's Discovery of BindView's Unauthorized Use and Copying of**

24 ||                     **Netbula's RPC Technology**

25

26 ||        27.     Netbula did not learn about BindView's acquisition of Netect, Inc. and

27 || BindView's protracted use and distribution of Netbula's RPC technology and embedded

28 || "pwrpc32.dll" file until after September 28, 2005, when BindView contacted Netbula, inquiring

-10-

1   about purchasing a needed license for Netbula's main product line, the "PowerRPC." As a result

2   of communications with BindView regarding licensing matters, Netbula suspected that BindView

3   had been using Netbula's RPC technology without paying royalties since acquiring Netect, Inc.

4

5          28.    In early October of 2005, Netbula's Chief Sales and Marketing Officer, Mr.

6   Don Yue, twice made written requests to BindView for a detailed royalty report demonstrating:

7   (1) the dates of each individual copying of Netbula's RPC technology; (2) the operating system

8   environments in which Netbula's RPC technology was used in each instance; (3) whether the

9   usage of each copy was of the individual client variety or of the server variety; and (4) the total

10   number of computers onto which the Netbula RPC technology had been copied by and through

11   BindView. After not receiving a response from BindView to the initial correspondence, Mr. Yue

12   sent a correspondence to Eric J. Pulaski, BindView's President and CEO, on October 10, 2005. In

13   that letter, Netbula (through Mr. Yue) requested the detailed royalty report by October 29, 2005.

14

15          29.    Shortly thereafter, Jeff Margolis, Senior Vice President of Development at

16   BindView, telephoned Mr. Yue of Netbula and confirmed that BindView had been using and

17   copying Netbula's RPC technology in its products, and that BindView would produce a royalty

18   report as requested. However, Mr. Margolis claimed that he did not know which BindView

19   products were using Netbula's RPC technology.

20

21          30.    On October 13, 2005, Mr. Yue followed up with another letter to Mr.

22   Pulaski (BindView's President and CEO) requesting that BindView's promised report incorporate

23   more necessary detail in hopes of avoiding the need for an external on-site audit of BindView,

24   including: (1) sample installable copies of BindView's software products for verification

25   purposes; (2) standard license agreements for the BindView products that made use of Netbula's

26   RPC technology; and (3) a dollar amount for sales of BindView products that included Netbula's

27   RPC technology. Also in this letter, Netbula specifically expressed its concern that BindView

28   might have offered licenses to its customers that allowed for multiple or unlimited copies of

W02-SF:6NB1\61482489.3                                 COMPLAINT

1   software by the customer at the customer's site. Thus, Netbula requested that BindView provide

2   information in its promised report regarding the number of such unrestricted licenses (known in

3   the industry as "site licenses") issued by BindView, if any. Netbula emphasized in this October

4   13, 2005 letter that an unlimited site license should not be counted the same as a license of only

5   one individual copy, and that Netbula expected a report that included a count of how many site

6   licenses had been issued by BindView. Netbula was clear that it wanted an accurate, complete,

7   and verifiable license usage report.

8

9       **Netbula's Investigation of the Extent of BindView's Unauthorized Use of Netbula's RPC**

10      **Technology and Its Effort to Informally Resolve the Dispute with BindView**

11

12          31.     On Oct 25, 2005, Mr. Margolis of BindView informed Mr. Yue of Netbula

13  that BindView had first used Netbula RPC technology in "HackerShield" (which was later re-

14  named "bv-Control for Internet Security"). Mr. Margolis also e-mailed Mr. Yue a spreadsheet

15  with a purported license-usage report.

16

17          32.     BindView's report was very abbreviated and did not provide any supporting

18  data from which Netbula could understand how BindView arrived at the numbers in the report.

19  BindView's report simply provided the purported annual number of total individual licenses used

20  from 1999 to 2005, without any of the supporting details or documentation Netbula had requested,

21  and without detailing how many site licenses had been issued. BindView claimed the total

22  number of copies of Netbula's RPC software technology containing the "pwrpc32.dll" file for the

23  six-year period from 1999-2005 was 1,681. In a follow-up telephone conversation that same day,

24  Mr. Yue reiterated Netbula's request for detailed information that would allow it to have some

25  confidence in the figures presented by BindView before the appropriate amount of royalty

26  compensation was discussed.

27

28

W02-SF:6NB1\61482489.3                                                                    COMPLAINT

33. Following Mr. Yue's telephone conversation with Mr. Margolis of BindView on October 25, 2005, Netbula discovered, through research, the figures hereinabove, revealing on information and belief that BindView's "bv-Control" products (which incorporate Netbula's copyrighted RPC technology and "pwrpc32.dll" file) account for over 80% of its software license revenue of tens of millions of dollars. Mr. Yue then e-mailed Mr. Margolis that same day and, once again, reiterated Netbula's request to receive complete, accurate, and verifiable information substantiating BindView's purported unpaid license-usage count by October 29, 2005.

34. Despite further communications between Mr. Yue of Netbula and managing agents of BindView after October 25, 2005 in which Mr. Yue sought a reasonable negotiated solution, BindView refused to acknowledge its use of any more than the purported approximately 1,681 copies of Netbula's RPC software technology containing the "pwrpc32.dll" file. BindView disavowed that any site licenses (*i.e.*, licenses allowing for unlimited use and copying at a particular site) were issued.

35. Netbula then, upon its own research, discovered that, on information and belief, BindView had engaged in numerous activities (including, but not limited to, issuing site licenses, offering free copies of HackerShield for download on BindView's Web site, and offering free copies of HackerShield to at least 1,500 conference attendees) which led Netbula to conclude that BindView's October 25, 2005 report was not entirely truthful or accurate. On November 2, 2005, Netbula sent a letter to Mr. Pulaski (BindView's President and CEO), explicitly stating that Netbula discovered that BindView had issued site licenses, allowed free downloads, and given away copies of software that contained Netbula's "pwrpc32.dll" file. Because Netbula had also discovered that the acquisition of BindView by Symantec was imminent, Netbula also demanded in its November 2, 2005 letter that BindView retain all records regarding Netbula's "PowerRPC" and RPC technology during the impending Symantec acquisition of BindView, for potential legal proceedings. Netbula's November 2, 2005 letter to Mr. Pulaski was copied to Symantec's CEO, Mr. John Thompson, placing Symantec on specific notice of Netbula's claims.

-13-

36.     On November 7, 2005, after receiving Netbula's letter, Mr. Pulaski

telephoned Mr. Yue at Netbula to discuss the Netbula RPC technology licensing matters.  Mr.

Pulaski promised to fully cooperate with Netbula and to provide complete and accurate reports on

all licenses, ***including site licenses and downloads***.  Mr. Pulaski expressed his understanding of

Netbula's concern regarding site licenses issued by BindView.  Mr. Pulaski also indicated his

understanding that such site licenses authorized BindView customers to make unlimited copies of

Netbula's RPC technology containing its "pwrpc32.dll" file, and are normally sought by large

companies needing a large number of copies of a licensed work.  Mr. Yue assured Mr. Pulaski

that, with respect to compensation for site licenses, so long as BindView acted in good faith,

Netbula would not count a site license as an "infinite" number of copies but would work with

BindView to obtain a reasonable assessment of the actual number of copies made under each site

license.  Mr. Pulaski inquired about the license fee for each copy of Netbula's RPC technology

containing its "pwrpc32.dll" software in the year 2000, and Mr. Yue told Mr. Pulaski the license

fee was about $50 per copy at that time.  Mr. Yue told Mr. Pulaski that the $50 per copy royalty

fee was about the same as the pricing of a very similar product by Netbula's competitor, and that

the rate was reasonable. ***Mr. Pulaski specifically agreed that BindView would pay royalties and***

***interest charges for each copy of Netbula's RPC technology containing the "pwrpc32.dll" file***

***made under a site license or otherwise, according to Netbula's standard license agreement and***

***pricing.***

37.     During that November 7, 2005 phone conversation, Mr. Yue also brought

up the issue of BindView's use and copying of Netbula RPC SDK licenses.  Mr. Pulaski told Mr.

Yue that several BindView programmers in India use copies of the Netbula RPC SDK in their

programming activities.  Mr. Yue explained that BindView's copying of PowerRPC SDK for

operating systems of Windows 2000 and above was unauthorized, and Mr. Pulaski further agreed

to provide SDK license usage reports and pay license fees accordingly.

-14-

38.     Still during their November 7, 2005 conversation, Mr. Pulaski and Mr. Yue also discussed the impending Symantec acquisition of BindView.  While Mr. Pulaski emphasized that BindView originally approached Netbula on its own initiative, Mr. Yue stated his belief that BindView was forced to come to Netbula because of the terms of the merger agreement between BindView and Symantec.  Mr. Yue's statement was made because, prior to his November 7, 2005 phone call with Mr. Pulaski, Netbula had reviewed BindView's 8-K filing with the United States Securities and Exchange Commission regarding the Symantec acquisition and other materials and discovered that, on information and belief:  (1) in BindView's agreement with Symantec, BindView warranted it did not violate the intellectual property of other persons or entities; (2) in BindView's agreement with Symantec, Symantec reserved the right to walk away from the acquisition if a lawsuit were filed against BindView and, in such an instance, BindView would be required to pay $8 million to Symantec; and (3) Mr. Pulaski owned over 8 million shares of BindView stock, which was traded under the symbol BVEW on the NASDAQ market and, on further information and belief, Mr. Pulaski's pre-tax gain from the sale of his BVEW stock would be more than approximately $32 million.  Thus, on information and belief, Mr. Pulaski was concerned about Netbula filing a lawsuit against BindView, which fueled his representations to Netbula regarding BindView's willingness to provide accurate information and pay full royalties.  Mr. Yue stated to Mr. Pulaski that Netbula had no intention of interfering with the Symantec acquisition, however, Netbula had the right to protect its intellectual property and would not sleep on its rights.  Mr. Yue expressed his personal respect for Mr. Pulaski for Mr. Pulaski's success as an entrepreneur.  Mr. Yue also explained that Netbula's desire was for a complete royalty report and the royalties it was due, and that it did not have a goal of interfering with the acquisition of BindView by Symantec, and made clear that Netbula would forego immediate legal action on the basis of Mr. Pulaski's promise that BindView would provide Netbula with complete, accurate, and verifiable license usage information.  Mr. Pulaski again agreed that BindView would provide Netbula with a complete and accurate royalty report.  Netbula relied upon Mr. Pulaski's representations in choosing to refrain from taking immediate formal legal action.

-15-

39.     On November 11, 2005, BindView's corporate counsel, Mr. D.C. Toedt, provided an e-mail update to Mr. Yue on the progress of the royalty report which Mr. Pulaski had agreed on November 7, 2005 that BindView would provide.  Mr. Toedt reassured Netbula that a "reasonably complete" report would be provided the following week.  Netbula responded and expressed its belief that the matter could be resolved within the framework of Netbula's standard license terms and industry norms in dealing with software license matters so long as it received accurate license usage information from BindView, further in accordance with and affirmance of the previous agreement between Mr. Yue on behalf of Netbula and Mr. Pulaski on behalf of BindView.

40.     On November 21, 2005, BindView provided a follow-up report which purported to show that 1,627 individual license copies and 54 site licenses of the relevant software components had been issued from 1999 to 2005.  The report also purported to show that there were 2,141 free downloads of the relevant software from December 15, 2000 to 2005.

41.     Upon review of the information in BindView's follow-up report, Netbula concluded that that BindView had, once again, omitted significant data from its reports, including information regarding:  (1) site licenses issued from 1999 to 2000; (2) free downloads from BindView's Web site which were made during 1999 and 2000; 3) conference giveaways in 2000; and 4) usage of Netbula's RPC SDK license by BindView's computer programmers in India.  Thus, on information and belief, Mr. Pulaski's November 7, 2005 representation that BindView would provide Netbula with complete and accurate data was false.  On that same day, November 21, 2005, Netbula sent an email to BindView acknowledging the progress made in the new BindView report, but requesting that BindView provide the data that was still missing.

42.     On November 23, 2005, Mr. Yue and Mr. Pulaski held a conference call to discuss the royalty reports.  Mr. Yue described the license usage data that had been omitted.  Mr. Pulaski refused to provide any further information on license usages.  Mr. Pulaski stated that

-16-

1  BindView had been unable to find a copyright registration for Netbula's "PowerRPC" at the

2  United States Copyright Office, and also stated that, if Netbula did not have a copyright

3  registration, Netbula would be unable to recover statutory damages in a copyright infringement

4  action.  Mr. Pulaski further stated that he had sympathy for Netbula, but the amount he could offer

5  was limited due to an agreement between BindView and Symantec, implicating Symantec in the

6  dispute.  Mr. Pulaski also told Mr. Yue that Netbula would soon be fighting Symantec, a much

7  larger company with vast resources, if it did not "take the money and run" which BindView was

8  prepared to offer.

9

10        43.     Having not received all of the information it was due, Netbula made

11  subsequent repeated requests to BindView for the missing royalty data.  BindView has ignored

12  Netbula's requests to provide the complete and accurate royalty information BindView had

13  originally promised.

14

15        44.     On information and belief, BindView's use and distribution of software

16  products containing Netbula's copyrighted RPC technology and "pwrpc32.dll" file was willful and

17  malicious.  On further information and belief, after acquiring Netect, Inc. in 1999, BindView

18  dismissed Netect, Inc.'s programmers, moved software development in-house, moved the

19  development projects multiple times and eventually to India (which moves would require the

20  making of a checklist of software items to transfer, and said checklists would necessarily include a

21  recognition Netbula's technology that managed to make it into each successive version of

22  BindView's "bv-Control" products), and proceeded to develop no less than seven major versions

23  of "bv-Control" software products which all made use of Netbula's RPC technology.  Mr. Pulaski

24  admitted in a telephone conversation with Mr. Yue on November 7, 2005 that BindView's

25  programmers must have previously known about BindView's use of Netbula's RPC technology.

26

27        45.     BindView has represented that Symantec became aware of the situation

28  regarding BindView's unauthorized use and distribution of Netbula's RPC technology through the

-17-

1    process of acquiring BindView. On information and belief, because Symantec was aware of the

2    infringement and has now acquired BindView, Symantec is responsible for any continuing

3    unauthorized acts of BindView in using and distributing software products containing Netbula's

4    RPC technology, and is responsible for BindView's past acts of infringement, unfair competition,

5    and other unlawful actions. On information and belief, Symantec and Mr. Pulaski have aided,

6    supported, and/or encouraged the use and distribution by BindView of Netbula's RPC technology

7    without Netbula's authorization and without an accounting for, and actual payment of, royalties

8    owed to Netbula.

### FIRST CLAIM FOR RELIEF

### *COPYRIGHT INFRINGEMENT (DIRECT, CONTRIBUTORY, AND VICARIOUS) (17 U.S.C. § 101 et seq.)*

### *(Against All Defendants) (For Damages and Profits, and Injunctive Relief*

      46.    Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 45, inclusive, of this Complaint.

      47.    Plaintiff has complied in all respects with the Copyright Act, 17 U.S.C. § 101 *et seq.*, and all other laws governing copyright, with respect to its RPC technology software and products. The content, selection, coordination, and arrangement of the information in Netbula's RPC technology and products have resulted in works which, in each individual instance and as a whole, constitute original works of authorship.

      48.    All of the original creations of content in Netbula's RPC technology (including its "pwrpc32.d11" file) and the works making use of it (including Plaintiff's "PowerRPC" products) constitute original works of authorship fixed in a tangible medium of

-18-

1  expression and are copyrightable under the Copyright Act.  Plaintiff has obtained a federal

2  copyright registration for its Netbula "PowerRPC" software product (Registration No. TX 6-211-

3  063, registered October 18, 2005, attached as Exhibit A to this Complaint).  Plaintiff also has

4  common law copyright rights in its original published works.

5

6          49.    At all times relevant hereto, Plaintiff has been and still is the holder of the

7  exclusive rights under the Copyright Act to reproduce, adapt, perform, distribute, display, exhibit,

8  and license the reproduction, adaptation, performance, distribution, display, exhibition, and other

9  use of its RPC technology and products, including its "pwrpc32.d11" file.

10

11          50.    Plaintiff has invested substantial time, effort, and monies in the creation and

12  public distribution of its RPC technology and products, based in part upon the opportunity to

13  recover its investment from its copyrighted content, and to obtain the revenues and business

14  advantages the copyrighted content provides in connection with Netbula's offering of computer

15  software programs and licenses to the public.

16

17          51.    Plaintiff's RPC technology (including its SDK and runtime licenses)

18  contains the "pwrpc32.d11" file necessary to the functionality of its RPC software products such

19  as "PowerRPC."  On information and belief, Defendants' HackerShield and "bv-Control" software

20  products have been and are distributed containing Netbula's technology, including its

21  "pwrpc32.d11" file.  The selection, coordination, and arrangement of RPC technology information

22  (including the "pwrpc32.d11" file) in Defendants' HackerShield and "bv-Control" products is

23  substantially similar, and in fact identical, in material respects, to the content, selection,

24  coordination, and arrangement of the copyright-protected content of Netbula's RPC technology

25  and products.

26

27          52.    Defendants' HackerShield and "bv-Control" products contain copies of

28  significant material portions of the content of Plaintiff's technology and products, including

-19-

1  Plaintiff's "pwrpc32.d11" file, or content that is substantially similar thereto. In particular,

2  Defendants have repeatedly copied or made use of Netbula's RPC technology containing its

3  important "pwrpc32.d11" file.

4

5  53.     Netbula is informed and believes, and thereupon alleges, that Defendants

6  had access to the content of Plaintiff's RPC technology and "pwrpc32.d11" file as alleged

7  hereinabove and acquired possession of the content of said technology by directly and/or

8  substantially copying that information from products originating from Netbula, and intentionally

9  reproduced, displayed, adapted, exhibited, and/or publicly distributed the content of Plaintiff's

10 RPC technology and software products in Defendants' "HackerShield" and "bv-Control" products

11 without Plaintiff's authorization or consent.

12

13 54.     Defendants, without the permission or consent of Plaintiff, have

14 reproduced, displayed, adapted, exhibited and/or publicly distributed the copyrighted content of

15 Plaintiff's technology and products.  On information and belief, these infringements have occurred,

16 *inter alia*, through Defendants' actions in directly and/or substantially copying the content

17 identified herein from Plaintiff's technology and products (including the "pwrpc32.d11" file) into

18 Defendants' "HackerShield" and "bv-Control" products.  Plaintiff has never authorized

19 Defendants, by license, assignment, transfer, or otherwise, to copy, reproduce, display, adapt,

20 exhibit, and/or distribute the above-identified content of Plaintiff's RPC technology and products,

21 and further, has never authorized Defendants to do so without payment of royalties.

22

23 55.     Defendants' unauthorized use and copying of Netbula's copyrighted RPC

24 technology and "pwrpc32.dll" file and distribution of same to third parties as part of BindView's

25 software products has, on information and belief, resulted in the infringement of Netbula's

26 copyrighted RPC technology and "pwrpc32.dll" file by numerous third parties who have come

27 into possession of said technology through BindView's products and have potentially copied and

28 distributed it further.

-20-

56.     By intentionally copying, reproducing, displaying, adapting, exhibiting, and/or distributing the above-identified content of Plaintiff's RPC technology and products as described hereinabove, Defendants have directly, contributorily, and/or vicariously infringed Plaintiff's exclusive rights in its copyrighted works, both in connection with the use and copying by each other and with the use and copying by third parties.  By means of the unlawful conduct alleged herein, Defendants have infringed and will continue to infringe Plaintiff's valuable copyrights in the content of its RPC technology and products described herein.

57.     On information and belief, Defendants have each knowingly and systematically participated in, facilitated, supported, materially contributed to, and/or encouraged the unauthorized copying, reproducing, displaying, adapting, exhibiting, and/or public distributing of Plaintiff's copyrighted RPC technology content and products, and each of the Defendants has actual and constructive knowledge of the infringements committed by and through BindView and its "HackerShield" and "bv-Control" products and has had (and continues to have) the ability to control or halt such conduct at all relevant times, be it conduct of the Defendants or of third parties.  On further information and belief, Defendants have also each knowingly and systematically participated in, facilitated, supported, materially contributed to, and/or encouraged the unauthorized copying, reproducing, displaying, adapting, exhibiting, and/or public distributing of Plaintiff's copyrighted RPC technology content and products by each other and by third parties, with actual and constructive knowledge of the infringements committed by and through each other and the third parties.  On further information and belief, at all relevant times, each of the Defendants had the right, ability, and opportunity to halt and/or control the unlawful conduct of each of the other Defendants and third parties as alleged herein.  On further information and belief, Symantec was on notice of the dispute between Netbula and BindView and, as the acquirer of BindView, is responsible for the infringements committed by and through BindView and its managing agents, including Defendant Pulaski.

-21-

COMPLAINT

1        58.     On information and belief, each of the Defendants, through: (a) their active

2  participation in the infringing conduct of each other and of third parties; (b) their assistance of and

3  material contribution to each other and third parties in the infringing conduct; (c) their supervision

4  of and ability to control or halt the infringing conduct of each other and third parties; and (d) the

5  substantial, direct financial benefits that each of the Defendants has derived and continues to

6  derive from all of the aforesaid acts, all with full knowledge of their unlawfulness, is

7  contributorily and vicariously liable for the unlawful infringing conduct of each of the other

8  Defendants and each third party as alleged hereinabove.

9

10        59.     Plaintiff is informed and believes, and on that basis alleges, that Defendants'

11  acts of infringements as alleged herein were committed knowingly, intentionally, maliciously,

12  willfully, and in flagrant disregard of and indifference to the rights and property of Plaintiff.

13

14        60.     As a direct and proximate result of Defendants' unlawful acts as described

15  herein, Plaintiff has suffered and will continue to suffer injury to its business, goodwill, and

16  property.  By means of the unauthorized conduct alleged herein, Defendants have deprived and

17  will continue to deprive Plaintiff of gains, revenues, royalties, business advantages, and/or the

18  opportunity to recover its investment in its RPC technology and products, both direct and indirect.

19  As such, Defendants have created and continue to create a disincentive for similar investments in

20  the arts.  On information and belief, Defendants have also derived substantial financial benefit

21  from their unlawful conduct with respect to Plaintiff's copyrighted materials, as well as from the

22  unlawful and infringing conduct of each other and of third parties.

23

24        61.     Each infringing act of copying, reproducing, displaying, adapting,

25  exhibiting, and/or distributing the content of Plaintiff's RPC technology (including Netbula's

26  "pwrpc32.d11" file), as well as the continuing threat of the same, constitutes a separate claim

27  against Defendants, and each of them, under the Copyright Act.  Each post, copy, reproduction,

28  adaptation, exhibition, display, and/or distribution of Plaintiff's copyrighted materials on and

-22-

1 | through Defendants' products, or by any other means, constitutes a separate and distinct act of
2 | infringement, whether committed by individual Defendants or combinations of them, and
3 | including acts of third parties for which Defendants are contributorily and/or vicariously liable.
4 | Plaintiff has sustained, and will continue to sustain, substantial damage to the value of its business,
5 | in that the activities of Defendants described in this Complaint have diminished and will continue
6 | to diminish the gains, revenues, royalties, and business advantages which Plaintiff would
7 | otherwise receive from the use of its copyrighted works. In addition, Defendants have realized
8 | unlawful and unjust profits from the unauthorized and illegal copying, reproduction, adaptation,
9 | exhibition, and/or displaying of the above-referenced content of Plaintiff's copyrighted works. As
10 | a result of Defendants' acts of intentional direct, contributory, and/or vicarious infringement,
11 | Plaintiff is without an adequate remedy at law, in that actual damages are difficult to ascertain.
12 | Accordingly, Plaintiff requests that this Court grant the injunctive relief prayed for herein.

13 |

14 |      62.    Plaintiff is entitled to recover from Defendants the damages, including
15 | attorneys' fees, it has sustained and will sustain, and any gains, profits, and advantages obtained by
16 | Defendants as a result of Defendants' acts of infringement alleged above, be they direct or indirect.
17 | At present, the amount of such damages to Plaintiff and the gains, profits, and advantages
18 | Defendants have obtained by reason of the unlawful conduct described herein cannot be fully
19 | ascertained by Plaintiff, but are likely to exceed $1,000,000.

20 |

21 |      63.    Furthermore, Plaintiff has no adequate remedy at law. Unless Defendants
22 | are preliminarily and permanently enjoined from committing the unlawful acts described herein,
23 | Plaintiff will continue to suffer irreparable harm. Plaintiff's harm is irreparable because it is
24 | extremely difficult to ascertain the amount of compensation which will afford Plaintiff adequate
25 | relief if Defendants are not enjoined at this time, in part because of the nature of intellectual
26 | property. Plaintiff is entitled, pursuant to 17 U.S.C. § 502, to injunctive relief in the form of a
27 | temporary restraining order, a preliminary injunction, and/or a permanent injunction restraining
28 | Defendants and all persons acting in concert with them, from engaging in any further such acts in

-23-

1  violation of the Copyright Act and from distributing Defendants' products which are the unlawful

2  fruits of their unlawful conduct.

3

4                              **SECOND CLAIM FOR RELIEF**

5

6                  ***INTENTIONAL FRAUD (California Civil Code § 1709)***

7

8                  ***(Against All Defendants) (For Damages and Exemplary Damages)***

9

10                 64.     Plaintiff realleges and incorporates herein by reference the allegations of

11  paragraphs 1 through 63, inclusive, of this Complaint.

12

13                 65.     In the letters sent by Netbula to BindView on October 10, 2005 and October

14  13, 2005, Netbula specifically requested that BindView report the number of unlimited licenses

15  (known as "site licenses") issued to BindView customers.  As alleged above, Netbula made it clear

16  that the copies of Netbula's RPC technology containing the "pwrpc32.dll" file are counted by the

17  number of machines onto which "pwrpc32.dll" is installed, and that royalties are owed

18  accordingly.  On information and belief, BindView managing agents, including its CEO, Mr.

19  Pulaski, knew that site licenses had been issued by BindView and participated in negotiating such

20  site licenses with customers.  On information and belief, BindView's sales database includes

21  information on the type of licenses BindView's customers purchase, and BindView is capable of

22  compiling such information.  However, on further information and belief, BindView's October 25,

23  2005 report to Netbula, which was compiled and communicated to Netbula by BindView

24  managing agents, purposely concealed key details regarding royalty data, including the fact that

25  there were at least 54 site licenses issued by BindView between 2001-2005.  On information and

26  belief, the report that BindView provided falsely and fraudulently represented material facts and

27  promises to Netbula, including, but not limited to, that BindView's distribution of Netbula's RPC

28

                                        -24-

1  technology (containing the "pwrpc32.dll" file) was limited to approximately 1,681 copies and did

2  not include various other means of distribution or site licenses.

3

4          66.     On or about November 7, 2005, Defendant Pulaski further represented to

5  Mr. Yue of Plaintiff Netbula that BindView would provide a complete and accurate informational

6  accounting of all licenses and other distributions of Netbula's RPC technology, as alleged

7  hereinabove, after Netbula described for BindView the incompleteness of BindView's earlier

8  report. On information and belief, the second report that BindView provided also falsely and

9  fraudulently represented material facts and promises to Netbula, including, but not limited to, that

10  BindView's distribution of Netbula's RPC technology was limited to approximately 1,627

11  individual licenses and 54 site licenses for the years 1999-2005, and did not include other means

12  of distribution.

13

14          67.     On information and belief, the reports provided to Netbula as alleged above,

15  as well as the related representations by Mr. Pulaski and other BindView managing agents

16  (including D.C. Toedt and Jeff Margolis) that said reports would and did contain complete and

17  accurate information regarding BindView's license usage, all as alleged in this Complaint, were

18  knowingly false when made and were made with the intent to deceive Plaintiff and to induce

19  Plaintiff to rely upon the false and/or incomplete reports and representations. On further

20  information and belief, Defendants are familiar with computer software-industry licensing models,

21  and their acts of intentional concealment and misrepresentation were calculated attempts to induce

22  Netbula into accepting a lower royalty payment than was actually due from BindView and to

23  induce Netbula to refrain from taking immediate legal action against BindView which may have

24  affected BindView's acquisition by Symantec.

25

26          68.     On information and belief, Defendants, through Mr. Pulaski and other

27  BindView managing agents (including D.C. Toedt and Jeff Margolis) on their own behalf and as

28  managing agents on behalf BindView (now acquired by Symantec), all as alleged in this

-25-

1  Complaint, intended to induce Plaintiff to rely on the false representations alleged above in
2  foregoing an immediate lawsuit and vindication of its rights prior to the acquisition of BindView
3  by Symantec and, in fact, Plaintiff justifiably did so rely upon Defendants' representations.  On
4  further information and belief, each of the representations was knowingly false when made and
5  designed to mislead and deceive Plaintiff.  On further information and belief, Symantec was on
6  notice of the dispute between Netbula and BindView and, through its managing agents, engaged
7  in, ratified, or authorized each of the false representations alleged herein and, as the acquirer of
8  BindView, is responsible for the fraud committed by and through BindView and its managing
9  agents.

10

11       69.     The representations that were made by Defendants to Plaintiff were, in fact,
12  false.  As described hereinabove, Plaintiff has demonstrated that, on information and belief, the
13  reports it was given by BindView left out certain key information and statistics, proving the prior
14  and concurrent representations regarding the completeness and accuracy of said reports to be false.

15

16       70.     On information and belief, at the time Defendants, through Mr. Pulaski and
17  other BindView managing agents as alleged hereinabove, made the false representations discussed
18  herein to Plaintiff, they knew such representations to be false, and had no intention to perform in
19  such a way as to make them true by providing complete and accurate information.  The false
20  representations were made to Plaintiff with the wrongful intent to induce Plaintiff to rely to its
21  detriment and forego legal action vindicating its rights and intellectual property.

22

23       71.     At the time the false representations discussed herein were made and at the
24  time Plaintiff relied on them, Plaintiff did not know the representations were false, but believed
25  them to be true and reasonably and justifiably relied upon them to its detriment in foregoing
26  immediate legal action.  If Plaintiff had known of the true facts and the actual intention of
27  Defendants with respect to withholding information from their royalty reports, Plaintiff would
28  have proceeded with immediate litigation in the first place.

W02-SF:6NB1\61482489.3                                                        COMPLAINT

72.     As a proximate result of Defendants' fraud and deceit as alleged herein, Plaintiff has been damaged by Defendants' conduct and fraud in that it has been forced to expend a substantial amount of time, energy, resources, and finances in attempting to discover the true facts regarding the number and scope of its works used and distributed by Defendants, and to delay the legal vindication of its rights to its detriment.  Defendants' false representations as discussed herein were a substantial factor in causing, and indeed the proximate cause of, Plaintiff's harm.

73.     On information and belief, the conduct of Defendants was intentional and amounted to fraud and deceit, with the intention on the part of Defendants to deprive Plaintiff of its legal rights and/or to otherwise cause injury to Plaintiff, and was despicable conduct that subjected Plaintiff to unjust hardships in conscious disregard of its rights.  In connection with the matters alleged above, Defendants, through the actions of BindView's managing agent Eric J. Pulaski (acting both within the scope of his employment and managerial capacity for BindView which has now been acquired by Symantec and in his own personal interest and capacity, and whose actions as President/CEO of BindView were necessarily engaged in, authorized, and ratified by BindView), as well as through the actions of D.C. Toedt and Jeff Margolis (acting within the scope of their employment and managerial capacity as Corporate Counsel and Senior Vice President of BindView such that their actions were necessarily engaged in, authorized, and ratified by BindView) are guilty of oppression, fraud, and malice pursuant to California Civil Code Section 3294 because, on information and belief, they made intentionally false representations to Plaintiff in a manner designed specifically and intentionally to induce Plaintiff to rely and to damage Plaintiff in connection therewith.  Plaintiff is therefore also entitled to exemplary damages in an amount appropriate to punish and make an example of Defendants to the community.

W02-SF:6NB1\61482489.3                                                                                    COMPLAINT

## THIRD CLAIM FOR RELIEF

### *BREACH OF CONTRACT*

#### *(Against Defendants BindView and Symantec Only) (For Damages)*

74.    Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 73, inclusive, of this Complaint.

75.    On November 7, 2005, BindView's President/CEO Mr. Pulaski specifically agreed, on behalf of BindView (now acquired by Symantec), that BindView would provide a complete, accurate, and verifiable royalty report to Netbula, and would abide by Netbula's standard license agreement and pay for royalties and interest on the basis of Netbula's standard license agreement (which included a $50 per copy license fee as of approximately the year 2000) according to the license usage figures to be contained in the promised report.  On information and belief, BindView's Corporate Counsel, D.C. Toedt, subsequently ratified and reaffirmed the agreement by way of written memorandum.

76.    The agreement between Mr. Pulaski (on behalf of BindView, which is now acquired by Symantec) and Mr. Yue of Netbula was a valid and enforceable contract supported by substantial consideration.  BindView agreed to provide specific information and payments, while Netbula agreed to accept the information and payments in exchange for the uses and copies of its RPC technology that had occurred and in exchange for its forbearance from legal action.

77.    BindView breached its contract with Netbula by failing and/or refusing to provide a complete, accurate, and verifiable royalty report to Netbula as promised, and by failing to abide by Netbula's standard license agreement and pay for royalties and interest on the basis of Netbula's standard $50 per copy license fee as of approximately the year 2000.

-28-

78.     The actions of BindView, as alleged herein, have deprived Plaintiff of its contractual rights to payment of royalties guaranteed in the contract between BindView and Netbula, to which Plaintiff is legally entitled.  On information and belief, Symantec was on notice of the contract between Netbula and BindView and, through its managing agents, engaged in, ratified, or authorized the breaches alleged herein and, as the acquirer of BindView, is responsible for the breaches committed by and through BindView.

79.     Netbula has performed all of the obligations on its part to be performed under the contract alleged herein, including specifically requesting the information and payments due under the contract on multiple occasions and refraining from prior legal action.

80.     As a legal and proximate cause of BindView's breach of contract, Plaintiff has sustained and will continue to sustain substantial economic damages in the form of unpaid royalties and interest.  The precise nature and amount of such accrued and continuing damages is not presently known to Plaintiff, and cannot be ascertained with any definitiveness at this time due to Defendants' active concealment of complete and accurate license usage information, but Plaintiff's actual and continuing damages will be proven at trial.

## FOURTH CLAIM FOR RELIEF

### *STATUTORY UNFAIR COMPETITION (Cal. Bus. & Prof. Code § 17200 et seq.)*

### *(Against All Defendants) (For Restitution and Injunctive Relief)*

81.     Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 80, inclusive, of this Complaint.

-29-

82.     Plaintiff is informed and believes, and on that basis alleges, that Defendants' conduct as alleged in this Complaint involving the willful and intentional unlawful infringement of Plaintiff's own copyrighted materials, intentional fraud, and breach of contract all to the benefit of Defendants and Defendants' business endeavors and computer software products, and to the great detriment of Plaintiff and Plaintiff's business endeavors and RPC technology and products, constitutes unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business & Professions Code § 17200 *et seq.* that has a substantial effect on commerce, resulting in Defendants' unjust enrichment. On information and belief, Defendants willfully intended to trade on the business goodwill of Plaintiff, Plaintiff's RPC technology and products, and Plaintiff's intellectual property, and to cause injury to Plaintiff and its business through their unlawful, unfair, and/or fraudulent business practices as described herein.

83.     On information and belief, the actions of Defendants as described in this Complaint had the effect of gaining for Defendants substantial revenues and business goodwill for which Plaintiff should rightfully have been compensated. Instead, on further information and belief, Defendants have retained all revenues and business goodwill for themselves without providing any compensation to Plaintiff in return for their use of Plaintiff's intellectual property which was essential to the acquisition of Defendants' revenues and goodwill in the first place. Furthermore, on information and belief, Defendants perpetuated their wrongful conduct by engaging in a fraud that concealed from Plaintiff the true amounts of use and copying of Plaintiff's software which Defendants had proximately caused, and that further concealed the true amount of compensation rightfully owing to Plaintiff and prevented Plaintiff from recovering its rightful compensation. Moreover, on information and belief, Defendants breached a contract with Plaintiff through which Plaintiff and Defendants had agreed upon appropriate compensation to Plaintiff for Defendants' wrongful acts, further compounding Defendants' misdeeds and denying Plaintiff the compensation it is rightfully owed. On information and belief, all of these actions had the further effect of preventing Plaintiff from recovering monies which would aid the perpetuation of Plaintiff's business and related endeavors, as well as the effect of delaying Plaintiff's vindication of

-30-

1  its rights, and therefore, amount to unlawful, unfair, and/or fraudulent business acts or practices in

2  violation of California Business & Professions Code § 17200 *et seq.*

4         84.    On information and belief, Plaintiff alleges that Defendants are continuing

5  to engage in one or more acts of unlawful, unfair, and/or fraudulent business acts or practices

6  involving the conduct alleged in this Complaint (and related conduct) to Plaintiff's substantial

7  economic detriment, including willful and intentionally unlawful direct, contributory, and

8  vicarious infringement of Plaintiff's copyrighted materials for Defendants' own business advantage

9  without providing the rightful compensation to Plaintiff, all with the knowledge, aid,

10  encouragement, and support of each other.  On further information and belief, Symantec was on

11  notice of the dispute between Netbula and BindView and, through its managing agents, engaged

12  in, ratified, or authorized each of the unlawful, unfair, and/or fraudulent business acts or practices

13  alleged herein and, as the acquirer of BindView, is responsible for those acts committed by and

14  through BindView and its managing agents (including Defendant Pulaski).

16         85.    As a direct and proximate result of Defendants' unlawful, unfair, and/or

17  fraudulent business acts or practices as described herein, Plaintiff has suffered and will continue to

18  suffer injury to its business, goodwill, and property for which it is entitled to restitution pursuant

19  to California Business & Professions Code § 17203.

21         86.    Furthermore, Plaintiff has no adequate remedy at law to compel Defendants

22  to cease their wrongful acts, and therefore seeks injunctive relief.  Unless the Court grants an

23  injunction, Plaintiff will be compelled to prosecute a multiplicity of actions to remedy this

24  continuing unfair, unlawful, and/or fraudulent conduct.  Unless Defendants are preliminarily and

25  permanently enjoined from committing the unlawful acts described herein, Plaintiff will continue

26  to suffer irreparable harm.  Plaintiff's damages are irreparable because it is extremely difficult to

27  ascertain the amount of compensation which will afford Plaintiff adequate relief if Defendants are

28  not enjoined at this time, in part because of the nature of intellectual property and, on information

W02-SF:6NB1\61482489.3                                  COMPLAINT

1   and belief, the concealment of information by Defendants as alleged in this Complaint. Plaintiff is

2   entitled, pursuant to California Business & Professions Code §§ 17203 and 17535, to injunctive

3   relief in the form of a temporary restraining order, a preliminary injunction, and/or a permanent

4   injunction restraining Defendants, their officers, agents and employees, and all persons acting in

5   concert with them, from engaging in any further such acts of unfair competition.

6

7                              **FIFTH CAUSE OF ACTION**

8

9   ***EQUITABLE ACCOUNTING AND IMPOSITION OF A CONSTRUCTIVE TRUST***

10

11                              ***(Against All Defendants)***

12

13           87.     Plaintiff realleges and incorporates herein by reference the allegations of

14   paragraphs 1 through 86, inclusive, of this Complaint.

15

16           88.     As a result of Defendants' unlawful and tortious conduct as alleged in this

17   Complaint, Defendants are now in possession of a substantial amount of gains, revenues, profits,

18   and advantages to which Plaintiff is entitled under the claims stated in this Complaint and general

19   principals of equity.

20

21           89.     By reason of the wrongful and unlawful manner in which Defendants have

22   obtained such gains, revenues, profits, and advantages, Defendants are now acting as involuntary

23   trustees holding such gains, revenues, profits, and advantages in constructive trust for Plaintiff,

24   with a duty to convey them to Plaintiff forthwith.

25

26           90.     Plaintiff has been, and will be, unable to ascertain the precise amount of

27   gains, revenues, profits, and advantages held by Defendants as constructive trustees, without a full

28   and complete accounting by Defendants. Plaintiff is entitled to an order imposing a constructive

W02-SF:6NB1\61482489.3                                                                    COMPLAINT

1   trust on all gains, revenues, profits, and advantages obtained by Defendants from the wrongful,

2   unlawful, and tortious acts alleged in this Complaint, and requiring a full and complete accounting

3   by Defendants to Plaintiff of all gains, revenues, profits, and advantages so held.

4

5                              **PRAYER FOR RELIEF**

6           WHEREFORE, Plaintiff prays for judgment to be entered against Defendants as

7   follows:

8

9           1.      That Defendants, and each of them, be held liable for direct, contributory,

10  and/or vicarious infringement of Plaintiff's copyrights in violation of the federal Copyright Act, 17

11  U.S.C. § 501 *et seq.*, as alleged herein;

12

13          2.      That Defendants, and each of them, be held liable for intentional fraud in

14  violation of California Civil Code Section 1709, as alleged herein;

15

16          3.      That Defendants BindView and Symantec, and each of them, be held liable

17  for breach of contract, as alleged herein;

18

19          4.      That Defendants, and each of them, be held liable for unfair competition in

20  violation of California Business & Professions Code § 17200 *et seq.*, as alleged herein;

21

22          5.      That Defendants, and each of them, be liable for an equitable accounting to

23  Plaintiff through the imposition of a constructive trust, as alleged herein;

24

25          6.      That the Court find a substantial likelihood that Defendants will continue to

26  infringe, or contribute to or vicariously support the infringement of, Plaintiff's copyrights in the

27  content of Plaintiff's RPC technology and products, unless enjoined from doing so;

28

-33-

W02-SF:6NB1\61482489.3                                                                    COMPLAINT

7.     That Defendants and their officers, employees, agents, servants, attorneys, and representatives, and all other persons, firms, or corporations in active concert or privity or in participation with them, be preliminarily and thereafter permanently enjoined and restrained in the form of a temporary restraining order, a preliminary injunction, and/or a permanent injunction, pursuant to the Court's inherent equitable powers and pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, from:

(a) directly or indirectly engaging in any manner in the unauthorized copying, reproduction, adaptation, exhibition, distribution, display, or other infringement of Plaintiff's protected works and/or exclusive copyright rights (whether now in existence or hereafter created), including, without limitation, those involving the original content of and works on and in Plaintiff's RPC technology and products and from continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop, or manufacture any works derived or copied from the content of Plaintiff's copyrighted works, all as described in this Complaint;

(b) causing, contributing to, enabling, facilitating, supporting, aiding, or participating in any manner in the infringement of Plaintiff's protected works and/or exclusive copyright rights (whether now in existence or hereafter created), including, without limitation, the content of Plaintiff's RPC technology and products, all as described in this Complaint; and

(c) otherwise engaging in any conduct that unlawfully, unfairly, and/or fraudulently competes with Plaintiff and Plaintiff's RPC technology and products (including, without limitation, through the unauthorized use and infringement of Plaintiff's original works of authorship), all as described in this Complaint;

8.     That Defendants' unlawful conduct as alleged herein be deemed a willful violation of Plaintiff's intellectual property rights;

-34-

9. That Plaintiff be awarded its actual compensatory damages according to proof for Defendants' acts of copyright infringement, fraud, and breach of contract;

10. That Defendants be ordered to disgorge any profits or gains in Defendants' possession attributable to the infringement of Plaintiff's copyrights, be they direct or indirect profits;

11. That Plaintiff be awarded restitution in connection with Defendants' acts of unfair competition;

12. That Plaintiff be awarded exemplary damages from Defendants for violations of California Civil Code Section 1709;

13. That the Court order an accounting of all of all gains, profits, and advantages realized by Defendants, or others acting in concert or participation with them, from their unlawful conduct (including an accounting of all usages and copies of Netbula's RPC technology and "pwrpc32.d11" file and Defendants' revenues and profits related thereto), and that all such gains, profits, and advantages be deemed to be in constructive trust for the benefit of Plaintiff, at the sole cost and expense of Defendants, by means of an independent accountant;

14. That the Court order an accounting of licenses of Netbula's RPC technology distributed by Defendants and of all related license usages and/or copies by BindView customers, as well as the disclosure of the identities of all such customers, and allow Netbula to amend this Complaint to name such customers in this action for their infringement of Netbula's copyright rights as may be necessary or desirable;

15. That the Court order Defendants BindView and Symantec to notify each of their customers and potential customers who received infringing software technology identified in

-35-

1  this Complaint from said Defendants that the software was and is infringing and that the customers

2  and others should return the infringing software for credit, and that BindView and Symantec

3  should refund the amounts received, and report to the Court all returns and refunds;

4

5         16.    That Plaintiff recover its reasonable attorneys' fees pursuant to 17 U.S.C. §

6  505;

7

8         17.    That Plaintiff recover its costs of this suit, including expert witness costs,

9  pursuant to 17 U.S.C. § 505 and any other applicable laws and/or rules; and

10

11         18.    That Plaintiff be granted such other and further relief as this Court deems

12  just and proper.

13

14  DATED: _____, 2006

15          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

16

17  By _____

18              NEIL A. SMITH
               NATHANIEL BRUNO

19            Attorneys for Plaintiff

20            NETBULA, LLC

21

22

23

24

25

26

27

28

-36-

## CERTIFICATION OF INTERESTED PARTIES OR PERSONS

Pursuant to Northern District Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, forms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Don Yue.

DATED: _Jan 31_____, 2006

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

NEIL A. SMITH
NATHANIEL BRUNO

Attorneys for Plaintiff
NETBULA, LLC

-37-

W02-SF:6NB1\61482489.3

COMPLAINT