1  LAURENCE F. PULGRAM (CSB NO. 115163)
   *lpulgram@fenwick.com*
2  JEDEDIAH WAKEFIELD (CSB NO. 178058)
   *jwakefield@fenwick.com*
3  ALBERT L. SIEBER (CSB NO. 233482)
   *asieber@fenwick.com*
4  MARY E. MILIONIS (CSB NO. 238827)
   *mmilionis@fenwick.com*
5  FENWICK & WEST LLP
   555 California Street
6  12th Floor
   San Francisco, CA  94104
7  Telephone: (415) 875-2300
   Facsimile:  (415) 281-1350
8
   Attorneys for Defendants
9  BINDVIEW DEVELOPMENT CORPORATION,
   SYMANTEC CORPORATION, and
10 ERIC J. PULASKI

11                UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13

14 NETBULA, LLC, a Delaware limited          Case No.  C-06-0711-MJJ-WDB
   liability company,
15                                           **DEFENDANTS' OPPOSITION TO**
              Plaintiff,                      **PLAINTIFF'S MOTION FOR SANCTIONS**
16
       v.                                    **[F.R.C.P. 11(c), 28 U.S.C. § 1927]**
17
   BINDVIEW DEVELOPMENT                      Date:   June 6, 2007
18 CORPORATION, a Texas corporation;         Time:   10:30 a.m.
   SYMANTEC CORPORATION, a                   Dept.:  Courtroom C, 15th Floor
19 Delaware corporation; ERIC J. PULASKI,    Judge:  The Honorable Edward M. Chen
   an individual; and DOES 1-10, inclusive,
20
              Defendants.
21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.      INTRODUCTION ............................................................................................ 1

II.     FACTUAL BACKGROUND ........................................................................... 3

        A.      Background Of The Case ........................................................... 3

III.    ARGUMENT .................................................................................................... 5

        A.      The Motion Should Be Denied Based on Plaintiff's Excessive Delay ................... 5

        B.      Plaintiff Ignores the High Standard for Rule 11 Motions ........................................ 5

                1.      Rule 11 Sanctions Are an Extraordinary Remedy Reserved for Exceptional Cases .............................................................. 5

                2.      Rule 11 Sanctions May Not be Awarded for Arguments Unless it is Patently Clear They Have No Chance of Success ..................................... 7

        C.      Plaintiff Fails To Establish That Defendants' Counsel Acted In The Vexatious Manner Required For Sanctions Under 28 U.S.C. § 1927 ......................... 9

        D.      Defendants' Alleged "Violations" Do Not Rise To The Level Of Sanctionable Conduct ......................................................................... 9

                1.      Defendants' Interpretation of Plaintiff's Reliance Allegations Was Reasonable ................................................................................ 10

                2.      Neither The Questioning Of Discrepancies Found On The Face Of Plaintiff's Copyright Registration, Nor Arguments Premised On An Unsettled Area of Copyright Law, Are Frivolous Arguments Justifying The Imposition of Sanctions ................................................. 12

                3.      Defendants' Arguments In Support of Their Unclean Hands Defense Are Not Sanctionable ..................................................... 15

                4.      Defendants' Good Faith Interpretation of Events Occurring During Settlement Talks Does Not Give Rise To Sanctions ................................ 17

                5.      Defendants' Claim that Plaintiff Has Exaggerated Its Pricing Was Well Supported When Made, and Has Been Further Supported By Discovery ............................................................................... 20

IV.     CONCLUSION ................................................................................................ 22

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Ashlar Inc. v. Structural Dynamics Research Corp.*,
36 U.S.P.Q.2d 1402 (N.D. Cal. 1995) ................................................................. 13

*Associated Indem. Corp. v. Fairchild Industries, Inc.*,
961 F.2d 32 (2nd Cir. 1992)..................................................................... 6, 7, 8

*Baker v. Urban Outfitters, Inc.*,
254 F. Supp. 2d 346 (S.D.N.Y. 2003)..................................................................7

*Brush Creek Media, Inc. v. Boujaklian*,
2002 U.S. Dist. LEXIS 15321, 2002 WL 1906620 (N.D. Cal. 2002) .................. 13

*Burger v. Kuimelis*,
325 F. Supp. 2d 1026 (N.D. Cal. 2004) .............................................................. 16

*Cline v. Industrial Maint. Eng'g & Contr. Co.*,
200 F.3d 1223 (9th Cir. 2000)..............................................................................9

*Conn v. CSO Borjorquez*,
967 F.2d 1418 (9th Cir. 1992)..............................................................................6

*Curto v. Smith*,
248 F. Supp. 2d 132 (N.D.N.Y. 2003) ..................................................... 7, 9, 14

*Donaldson v. Clark*,
819 F.2d 1551 (11th Cir. 1987)............................................................................5

*Gaiardo v. Ethyl Corp.*,
835 F.2d 479 (3rd Cir. 1987) ..............................................................................7

*Golden Eagle Distributing Corp. v. Burroughs Crop.*,
801 F.2d 1531 (9th Cir. 1986)...........................................................7, 11, 14, 17

*Greenberg v. Sala*,
822 F.2d 882 (9th Cir. 1987)..........................................................................6, 7

*Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*,
315 F. Supp. 2d 1053 (C.D. Cal. 2004) ............................................................. 13

*New Alaska Develop. Corp. v. Guetschow*,
869 F.2d 1298 (9th Cir. 1989)..............................................................................9

*Operating Engineers Pension Trust v. A-C Co.*,
859 F.2d 1336 (9th Cir. 1988).........................................................................6, 9

*Parfums Givenchy v. C & C Beauty Sales*,
832 F. Supp. 1378 (C.D. Cal. 1993)....................................................................8

*Partington v. Gedan*,
961 F.2d 852 (9th Cir. 1992)............................................................................. 12

*Pierce v. F.R. Tripler & Co.*,
955 F.2d 820 (2d Cir. 1992)................................................................................6

*Price v. Hawaii*,
789 F. Supp 330 (D. Haw. 1992) .........................................................................5

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Riverhead Sav. Bank v. National Mortgage Equity Corp.*,
   893 F.2d 1109 (9th Cir. 1990) .............................................................................. 13

*Ryan v. Carl Corp.*,
   1998 U.S. Dist. LEXIS 9012, 1998 WL 320817 (N.D. Cal. 1998) ..................... 13

*Somerset Marine, Inc. v. Forespar Prods.*,
   876 F Supp 1114 (C.D. Cal 1994) .......................................................................... 6

*Warren v. City of Carlsbad*,
   58 F.3d 439 (9th Cir. 1995) .................................................................................... 6

*Wills v. Terhune*,
   No. C 99-2288, 1999 U.S. Dist. LEXIS 17346
   (N.D. Cal. Nov. 4, 1999) ...................................................................................... 19

*Woodrum v. Woodward County, Okla.*,
   866 F.2d 1121 (9th Cir. 1989) .............................................................................. 11

## STATUTES

17 U.S.C. § 411(a) ...................................................................................................... 12

17 U.S.C. § 412 ............................................................................................................. 8

28 U.S.C. § 1927 ........................................................................................................... 9

## RULES

Civil L.R. 7-8(c) ........................................................................................................... 5

Fed R. Civ. P. 11(b) ...................................................................................................... 6

Fed. R. Civ. P. 11(c)(1)(A) ........................................................................................... 6

## OTHER AUTHORITIES

Adv. Comm. Note to Fed. R. Civ. P. 11 (West 2007) ........................................ 5, 6, 22

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Defendants BindView Development Corporation ("BindView"), Symantec Corporation ("Symantec") and Eric J. Pulaski (collectively "Defendants") respectfully submit the following Opposition to Plaintiff Netbula LLC's ("Netbula" or "Plaintiff") Motion for Sanctions.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Netbula's Motion is an object lesson in when a party should <u>not</u> take the extraordinary step of filing a motion for Rule 11 sanctions.  Ignoring the reasonable basis and sound legal foundation for Defendants filings, Plaintiff has parsed the minutia of various papers filed over the last year in the hope of fabricating a basis for a sanctions motion where none exists.  Each supposedly "sanctionable" filing Plaintiff has identified was not only appropriate at the time it was made, but was made long ago.  Plaintiff offers no explanation for its failure to raise these issues before now.  Moreover, many of the supposed inaccuracies in Defendants' filings relate to disputed facts, the evidence of which Plaintiff continues to withhold in defiance of two discovery orders.

As discussed below, the statements Plaintiff points to relate to proper legal argument, *bona fide* factual disputes, and innocuous, peripheral matters – none of which are sanctionable.  Nonetheless, the petty nature of the issues Plaintiff raises unfortunately require this brief to delve into minutia and tertiary subjects that should never have had to bother this Court.

Plaintiff first takes issue with two valid legal arguments – and a related factual discussion of Plaintiff's copyright registration.  Defendants raised these arguments nearly a year ago in their June 15, 2006 Rule 12(b)(6) Motion to Dismiss Plaintiff's fraud claim.  In that motion, Defendants *successfully* asserted that Plaintiff had failed to plead the required element of reliance damages.  While the particular arguments and statement in question did not ultimately form the basis of the ruling in Defendants' favor, they were supported by the allegations of the Complaint and its exhibits, and by reasonable interpretations of applicable law.

Similarly, Plaintiff seeks sanctions for one of several points raised in Defendants' *successful* opposition to Plaintiff's Motion to Strike Defendants' "unclean hands" affirmative defense.  In that Opposition, Defendants identified inconsistencies relating to Plaintiff's copyright

1  registration, including an apparent inconsistency with respect to the alleged publication date and

2  the date Plaintiff was formed as a business. While Defendants have subsequently learned that

3  Plaintiff's formation date was likely earlier than they originally believed, the argument was

4  reasonable at the time, and in all events was immaterial to the main point of Defendants' non-

5  frivolous – and successful – opposition to the Motion to Strike.

6      Plaintiff also seeks sanctions for a representation in a September 29, 2006 joint case

7  management statement concerning Plaintiff's failure to provide certain documents at a settlement

8  meeting. In doing so, Plaintiff flatly mischaracterizes the record, advancing a tortured

9  misinterpretation of an email to suggest that Plaintiff offered to provide the requested documents.

10  In fact, the email shows just the opposite, and despite informal and formal requests – and two

11  court orders – Plaintiff *still* has not produced all of the information requested. Tellingly, the

12  allegedly sanctionable misrepresentation was in a joint statement reviewed and approved –

13  without comment or criticism – by Plaintiff's former counsel. If anything, Plaintiff has identified

14  a legitimate – and innocuous – factual dispute about the parties' settlement efforts – hardly a basis

15  for the extraordinary remedy provided by Rule 11.

16      Finally, Plaintiff accuses Defendants of mischaracterizing Netbula's licenses and pricing

17  in support of Defendants' fraud affirmative defense, both in the October 31 Opposition to

18  Netbula's Motion to Strike and in Defendants' December 6, 2006 Amended Answer. In fact, the

19  sales and licensing records produced by Plaintiff thus far – many of which Defendants were only

20  able to wrest from Plaintiff through repeated discovery motions – confirms that Defendants'

21  assertions were well founded, and that Plaintiff has in fact vastly exaggerated its pricing.

22      In the end, none of the alleged violations provides sufficient ground for drastic sanctions

23  Plaintiff seeks. Rather, they highlight Plaintiff's own failure to properly apply the rigorous

24  requirements for bringing such a serious motion. Plaintiff's motion is untimely, ill-conceived,

25  factually and legally groundless, and should be denied in its entirety. Defendants explained this

26  to Plaintiff in detail before this motion was filed. Accordingly, as set forth in the accompanying

27  Motion for Attorneys' Fees, Plaintiff should be ordered to fully reimburse Defendants for the

28  significant attorneys' fees incurred in opposing Plaintiff's improper motion.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## II.     FACTUAL BACKGROUND

### A.     Background Of The Case

In late September 2005, in the course of diligence prior to being purchased by Symantec, Defendant BindView discovered a small amount of code possibly belonging to a third party in one of BindView's products, bv-Control for Internet Security ("bv-CIS," formerly known as "HackerShield"). BindView had itself acquired this product by virtue of its acquisition of another company, Netect, Inc. ("Netect") in 1999. In good faith, BindView approached the third party, Netbula, to determine whether Netect had entered into a license agreement with Netbula and the scope of any such license, and to acquire any additional licenses as necessary. Netbula responded that Netect had purchased two licenses in July 1998, but that it was unable to locate the license agreements themselves.

Despite the fact that the Netbula code had been licensed for distribution, and that *BindView* had approached *Netbula* to discuss acquiring additional licenses, Netbula quickly began threatening litigation and demanding internal BindView information, including customer information. In October 2005, BindView advised Netbula that it would provide information requested by Netbula "to the extent practicable" and only if Netbula would first sign a nondisclosure agreement. Netbula declined to do so, and ultimately the talks broke down in November 2005.

In the meantime, BindView had suspended distributions of the Netbula files it had identified in its software (which Netbula files were themselves a modification of open source software originally created and distributed for free by Sun Microsystems). BindView removed that material from its bv-CIS product before its acquisition by Symantec. The Netbula materials were then replaced with a free, open-source replacement, which was also based on the original free code developed by Sun. Symantec acquired BindView in a reverse triangular merger effective on January 6, 2006, after the material in question had been removed from the bv-CIS product.

Netbula initiated this lawsuit on January 31, 2006. In its original Complaint, Netbula transformed what should be a relatively simple licensing dispute into a claim for copyright

infringement.  Moreover, it sought to convert the parties' unsuccessful settlement discussions into a claim for intentional fraud, breach of contract, and statutory unfair competition.  Further, rather than press its claims against BindView alone, Netbula also sued Symantec – which acquired BindView *after* its settlement discussions with Netbula terminated and *after* the Netbula materials had been removed from the product in question – and BindView's former CEO, Eric Pulaski, who had the misfortune of having participated in some of the settlement talks.

In its fraud claim, Netbula asserts that it delayed filing suit based on BindView's allegedly false promises to provide royalty payments.  On Defendants' Rule 12(b)(6) motion, Netbula's fraud claim was dismissed for failure to plead any cognizable reliance damages – a required element of a fraud claim.  Docket No. 37.  Thereafter Netbula filed a First Amended Complaint ("FAC"), alleging that it had paid lawyers and a royalty consultant in reliance on Defendants' alleged misrepresentations.  *See* FAC ¶ 75.  Plaintiff claims that its total out of pocket losses from this alleged fraud are $1086.25.  Declaration of Jedediah Wakefield In Support of Defendants' Opposition to Plaintiff's Motion for Sanctions ("Wakefield Decl."), Exh. N (Plaintiff's Supplemental Disclosure on Damages Computation at 8:1-17).

After Defendants answered, Plaintiff filed a Motion to Strike, seeking to strike certain affirmative defenses and challenging Defendants' denials of certain assertions in the Complaint.  With the exception of Defendants' fraud affirmative defense – which Plaintiff had offered to amend to provide more specificity, Plaintiff's Motion to Strike was denied in its entirety.

Plaintiff served its Rule 11 motion on March 14, 2007.  Wakefield Decl., ¶ 2.  On April 3, 2007, Defendants counsel sent counsel for Plaintiff a letter identifying the factual and legal deficiencies in Plaintiff's motion in detail, and urging Plaintiff not to file it.  Wakefield Decl., ¶ 3, Exh. A.  Defendants made clear that Rule 11 provides that the Court may award the prevailing party its attorneys' fees for the costs of opposing a Rule 11 motion, and that if they were forced to oppose such a patently improper Rule 11 motion, they would seek full reimbursement.  Plaintiff responded on April 11, merely stating that "none of the arguments in your letter have merit" and stating that, since Defendants' counsel did not "withdraw any of the offending papers" the motion would proceed.  *Id.* at ¶ 4, Exh. B.  Plaintiff's counsel failed to explain exactly how Defendants

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   would "withdraw" a Joint Case Management Statement, the Opposition to the Motion to Strike,

2   or the Motion to Dismiss containing the allegedly sanctionable statements.

3   **III.**   <u>**ARGUMENT**</u>

4      **A.**   <u>**The Motion Should Be Denied Based on Plaintiff's Excessive Delay**</u>

5         Although Rule 11 itself contains no express time limits, the Advisory Committee Notes

6   point out that Rule 11 motions should be brought promptly after the alleged violation occurs.

7   Where the alleged Rule 11 violation occurs in connection with a motion, it is anticipated that Rule

8   11 sanctions will be determined "<u>at the time the motion is decided or shortly thereafter</u>."  Adv.

9   Comm. Note to 1983 Amendment to Rule 11 (West 2007); *see Donaldson v. Clark,* 819 F.2d

10  1551, 1555 (11th Cir. 1987).  Thus, a party seeking sanctions cannot "lay in wait" while expenses

11  and fees mount, but rather must attempt to mitigate by bringing the deficiencies to the attention of

12  opposing counsel and, if necessary, to the court, as soon as possible.

13        Given the seriousness of Rule 11 sanctions, Plaintiff's delay in raising issues is

14  inexcusable.  Plaintiff has no excuse or justification for raising its purported concerns now –

15  when all of the pleadings and papers it identifies were filed *last year*, and all involve motions or

16  case management issues that were decided long ago.  Indeed, the entire purpose of Rule 11's 21-

17  day pre-filing notice is to afford the responding party an opportunity to "cure" the alleged defect.

18  Plaintiff's attempt to raise these issues now in the form of a Rule 11 motion is indefensible and

19  has resulted in wholly unnecessary costs to Defendants.  *See Price v. Hawaii*, 789 F. Supp 330,

20  335-336 (D. Haw. 1992) (motion for sanctions under Rule 11 should be denied when the moving

21  party fails to act promptly).  Plaintiff's excessive delay in filing also violates Civil L.R. 7-8(c),

22  which requires that motions for sanctions "must be made as soon as practicable after the filing

23  party learns of the circumstances that it alleges make the motion appropriate."  Plaintiff offers no

24  explanation for waiting over six months, and in one instance almost a year, to bring this motion.

25  On this basis alone, Plaintiff's motion should be denied.

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**B.**   **Plaintiff Ignores the High Standard for Rule 11 Motions**

      **1.**   **Rule 11 Sanctions Are an Extraordinary Remedy Reserved for Exceptional Cases**

Because of the potentially chilling effect on zealous advocacy, sanctions under Rule 11 are reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).  This is because "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Id.* at 1345; *See Conn v. CSO Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992) (district court abused discretion in awarding Rule 11 sanctions).  Accordingly, Rule 11 motions "should not be made or threatened for minor, inconsequential violations …" Adv. Comm. Note to 1993 Rule 11.  When considering a request for Rule 11 sanctions, a court must resolve all doubts in favor of the signer of the pleading or paper. *Associated Indem. Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32, 34-35 (2nd Cir. 1992).

Rule 11 sanctions can only be imposed when the signing attorney objectively fails to engage in a reasonable inquiry into the facts and law of the case.[1]  But where, as here, the complained of contentions are supported by a reasonable basis, sanctions are not proper. *See, e.g., Somerset Marine, Inc. v. Forespar Prods.*, 876 F Supp 1114, 1115-1116 (C.D. Cal 1994) (sanctions for contentions made in losing summary judgment denied when good-faith arguments supported the accused contentions).  Sanctions should instead be reserved for truly frivolous pleadings that argue legal positions that clearly have no chance for success. *Pierce v. F.R. Tripler & Co.*, 955 F2d 820, 830 (2d Cir. 1992).

---

[1] The reasonableness of representations is objectively measured at the time the motion or paper is presented to the court.  Fed R. Civ. P. 11(b); Adv. Comm. Note to 1993 Amendment to Rule 11 (West 2007), 146 F.R.D. 401, 585.  Rule 11 does not impart a continuing certification by counsel as to the reasonableness of papers previously filed nor impose an obligation to withdraw previously filed papers that later prove to contain inaccuracies and instead looks to see if there is a *prima facie* showing of evidence supporting the claim. *Warren v. City of Carlsbad*, 58 F.3d 439, 444 (9th Cir. 1995).  Additionally, where factual allegations are made on information and belief, they may be made at a time when a litigant has good reason to believe they are accurate, but may need discovery or other information to confirm their evidentiary basis. *See Greenberg v. Sala*, 822 F.2d 882, 886-887 (9th Cir. 1987) (errors of fact should not give rise to sanctions in pleadings filed before opportunity for discovery if litigant has conducted a reasonable inquiry).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Rule 11 motions are improper when an adversary's position is plausible – even if that

2    position is not adopted by the Court.  Seeking sanctions under such circumstances *is itself*

3    *sanctionable conduct*.  Fed. R. Civ. P. 11(c)(1)(A) (court may award to party prevailing on Rule

4    11 motion the reasonable expenses and attorney's fees incurred in opposing it); *Gaiardo v. Ethyl*

5    *Corp.*, 835 F.2d 479, 485 (3rd Cir. 1987) ("the use of Rule 11 … has become part of the so called

6    "hardball" litigation technique espoused by some firms and their clients.  Those practitioners are

7    cautioned that they invite retribution from courts which are far from enchanted with such abusive

8    conduct").

9    Importantly, Rule 11 permits sanctions only where a "pleading, motion or other paper"

10   *itself* is frivolous, not an individual argument in support of it: "In short, the fact that . . . one

11   argument or sub-argument in support of an otherwise valid motion, pleading or other paper is

12   unmeritorious does not warrant a finding that the motion or pleading is frivolous or that the Rule

13   has been violated."  *Golden Eagle Distributing Corp. v. Burroughs Crop.*, 801 F.2d 1531, 1540-

14   41 (9th Cir. 1986).  Accordingly, sanctions are not awardable where a party supports a motion on

15   several legal theories, one of which is later deemed to be unsupported.  *Id.*

16                    **2.      Rule 11 Sanctions May Not be Awarded for Arguments Unless it is**
                              **Patently Clear They Have No Chance of Success**
17

18   Plaintiff asserts that some of Defendants' filings advance positions that were not

19   "warranted by law."  However, such a violation of Rule 11 is only shown where it is "patently

20   clear that a claim has absolutely no chance of success under the existing precedence and … no

21   reasonable argument can be advanced to extend, modify or reverse the law as it stands …"

22   *Fairchild*, 961 F.2d at 34 (internal citations omitted).  In other words, this standard is only

23   violated where no plausible good faith argument could be made by a competent attorney to the

24   contrary.  *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 359-360 (S.D.N.Y. 2003)

25   (attorneys' fees awarded for opposing Rule 11 motion).  In areas of the law that cannot be

26   regarded as settled, it is inappropriate to sanction attorneys for such legal arguments.  *Curto v.*

27   *Smith*, 248 F. Supp. 2d 132, 142-143 (N.D.N.Y. 2003).

28   In our adversarial system, Rule 11 sanctions do not automatically or typically follow an

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

adverse ruling or judgment.  *See, Gaiardo* 835 F.2d at 483 (litigants misuse Rule 11 when

sanctions sought against party or counsel "whose only sin was being on the unsuccessful side of a

ruling or judgment").  In assessing a Rule 11 Motion, the court must determine when the

argument "turns from merely 'losing' to losing *and* sanctionable." *Fairchild,* 961 F.2d at 34

(emphasis in original).

Notwithstanding these authorities, it is apparent that Plaintiff takes the view that <u>any</u>

unsuccessful argument exposes the party advancing it to sanctions.  Of course, if such a standard

were applied to *Plaintiff's* conduct in this case, Plaintiff would be subject to significant sanctions.

Plaintiff has advanced a series of legal and factual arguments in this case that find no support in

fact or law.  For instance:

- Plaintiff's original Complaint sought attorneys' fees under the Copyright Act, even though, as a matter of law, Plaintiff is not entitled to such fees.  Complaint at 36:5-6.  *See* 17 U.S.C. § 412; *Parfums Givenchy v. C & C Beauty Sales*, 832 F. Supp. 1378, 1393 (C.D. Cal. 1993) (copyright owner barred from recovering attorneys' fees for copyright infringement where, as here, (1) copyright registered more that 3 months after work first published, and (2) infringing activity commenced after the date of first publication and before effective date of registration).

- In opposing Defendants' Motion to Dismiss, Plaintiff argued that its fraud allegations should be judged by a "notice" pleading standard, rather than the Rule 9 heightened pleading standard.  Since there can be no question that fraud claims are subject to a heightened pleading standard, Plaintiff had no good faith basis for making such a blatant misstatement of the law.  Docket No. 26, Memorandum in Opposition to Defendants' Motion to Dismiss at 9:3-5.

- Subsequently, Plaintiff improperly argued that Rule 9's heightened pleading standard applied to Defendants' unclean hands defense – a position the Court rejected in denying Plaintiff's Motion to Strike.  Docket No. 46, Motion to Strike Order at 7:17-8:20.

- Plaintiff also argued – with no legal support – that the Court's ruling on the Motion to Dismiss forever prohibited Mr. Pulaski from raising a personal jurisdiction defense.  Plaintiff continued to advance this argument *even after Defendants' informally advised Plaintiff of its error* – thus forcing Defendants to incur the needless expense of opposing Plaintiff's frivolous Motion to Strike an affirmative defense based on lack of jurisdiction.[2] The Court rejected Plaintiff's argument, finding that under controlling authority, "Defendants, as a matter of law, have the ability to challenge Plaintiff's *prima facie* case for jurisdiction until the time of trial."  *Id.* at 9:20-21.

---

[2] The Motion to Strike was granted – with leave to amend – only as to the fraud affirmative defense – which Defendants had voluntarily offered to amend before their Opposition was due.  Based on these facts, a Court could reasonably conclude that Plaintiff's entire Motion to Strike was needless, and was merely filed for purposes of harassment.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

In view of its own conduct, Plaintiff is no position to seek sanctions for Defendants' legitimate advocacy in this case. *See Fairchild*, 961 F.2d at 36 (cautioning that parties "*who live in glass pleadings ought not to throw Rule 11 stones*") (emphasis added).

### C. Plaintiff Fails To Establish That Defendants' Counsel Acted In The Vexatious Manner Required For Sanctions Under 28 U.S.C. § 1927

Section 1927 requires a finding that counsel "unreasonably and vexatiously" multiplied the proceedings in a case. This requires a finding of subjective bad faith. *See New Alaska Develop. Corp. v. Guetschow,* 869 F.2d 1298, 1306 (9th Cir. 1989) (reversing sanctions award). The underlying purpose of Section 1927 is to discourage the proliferation of filings in a case and the requisite increase in cost. *Cline v. Industrial Maint. Eng'g & Contr. Co*., 200 F.3d 1223, 1236 (9th Cir. 2000).

As discussed below, Section 1927 sanctions against Defendants or their counsel would be entirely inappropriate here. Plaintiff has failed to show that any of the allegedly "sanctionable conduct" was in subjective bad faith. Indeed, the actual unreasonable and vexatious multiplication of proceedings in this case arises from Plaintiff's pursuit of this baseless motion.

### D. Defendants' Alleged "Violations" Do Not Rise To The Level Of Sanctionable Conduct

Plaintiff has failed to justify the extreme remedy of Rule 11, or meet the standard for vexatious, bad faith conduct addressed by Section 1927. Rather, Plaintiff has identified legitimate factual disputes, valid legal argument, and immaterial matters for which sanctions are manifestly improper. In denying a motion for Rule 11 sanctions under similar circumstances, the court in *Curto* observed:

> A review of Plaintiff's motion reveals that the statements of which she complains are, at most, indicative of minor and non-material factual inconsistencies. Indeed, the majority of the statements Plaintiff points to relate to (1) *bona fide* factual disputes… (2) proper legal argument…and (3) innocuous procedural matters…For the foregoing reasons, the Court denies Plaintiff's motion for *Rule 11* sanctions. In addition, the Court admonishes Plaintiff that filing procedurally and substantively deficient motions is, in itself, a basis for imposing sanctions.

*Curto*, 248 F. Supp. at 142-143.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Here, Plaintiff has not and cannot demonstrate that the challenged filings are the type of

2   "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without

3   legal foundation, or brought for an improper purpose." *Operating Engineers*, 859 F.2d at 1344

4   (9th Cir. 1988). On the contrary, as shown below, Defendants' filings were made in good faith,

5   premised on sound law, and were based upon a reasonable inquiry into the facts at the time the

6   papers were signed.

7          **1.      Defendants' Interpretation of Plaintiff's Reliance Allegations Was
                      Reasonable**

8

9   In its Motion to Dismiss, filed nearly a year ago, Defendants successfully argued that

10  Plaintiff had failed to adequately plead a fraud cause of action. Docket No. 19, Motion to

11  Dismiss at 8:1-12:21; Docket No. 37, Motion to Dismiss Order at 6:13-22. The crux of that

12  section of the motion was that Plaintiff had failed to allege any damages incurred in reasonable

13  reliance on the representations identified in the Complaint. Motion to Dismiss at 10:21-12:3. In

14  its fraud claim, Plaintiff claimed to have delayed its filing of this action based on Defendants'

15  purported statements during settlement negotiations. Plaintiff had repeatedly identified allegedly

16  false "royalty reports" provided by BindView during settlement discussions, and alleged that the

17  reports "falsely and fraudulently represented material facts and promises to Netbula." Complaint

18  at ¶¶ 65-66. Among other points, Defendants asserted that Plaintiff could not have relied to its

19  detriment on the allegedly false reports, since Plaintiff alleged that it knew the reports were

20  inaccurate when it received them. Motion to Dismiss at 8:16-10:18. Although Plaintiff later

21  argued that its fraud claim was based on other representations *about* the reports – rather than the

22  reports themselves – Defendants' Motion to Dismiss was entirely reasonable based on the

23  allegations of the Complaint.

24  Specifically, in characterizing the fraud claim in the Motion to Dismiss, Defendants relied

25  on the actual allegations of the original fraud claim, found at ¶¶ 65-73 of the Complaint, *all of*

26  *which* discussed alleged misrepresentations in the specific <u>reports</u> sent to Plaintiff:

27      • "On information and belief, *the report that BindView provided falsely and fraudulently*
          *represented material facts and promises* to Netbula, including, but not limited to, that

28        BindView's distribution of Netbula's RPC technology (containing the 'pwrpc32.dll' file)

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS          -10-                    C-06-0711-MJJ-WDB

was limited to approximately 1,681 copies and did not include various other means of distribution or site licenses." Complaint ¶ 65 (emphasis added).

- "On information and belief, *the second report that BindView provided also falsely and fraudulently represented material facts and promises to Netbula . . . .*" *Id.* at ¶ 66 (emphasis added).

- "On information and belief, t*he reports provided to Netbula as alleged above*, as well as related representations . . . that said reports would and did contain complete and accurate information regarding BindView's license usage, all as alleged in this Complaint, *were knowingly false when made and were made with intent to deceive Plaintiff and to induce Plaintiff to rely upon the false and/or incomplete reports and representations*." *Id.* at ¶ 67 (emphasis added).

- "As described hereinabove, Plaintiff has demonstrated that, on information and belief, the *reports it was given by BindView* left out certain key information and statistics, proving the prior and concurrent representations *regarding the completeness and accuracy of said reports to be false*." *Id*. at ¶ 69 (emphasis added).

These are four direct quotes from the Complaint. They provided a strong basis for Defendants' arguments. While the Court concluded that Defendants had sufficiently alleged *other* false representations *concerning* the reports (*see* Motion to Dismiss Order at 5:8-24.), Defendants' arguments were far from frivolous. Moreover, there could be no concealment of the "facts" before the Court on the Motion to Dismiss, which was based solely on the Complaint.

In the end, the Court agreed with Defendants that Plaintiff had failed to adequately allege fraud, and on that basis granted Defendants' motion. *Id.* at 6:17-22. In its decision, the Court agreed that certain facts established Plaintiff's *non-reliance* on the data given. As stated in Judge Jenkin's Order granting dismissal of the fraud claim:

> Defendants contend that the money expended in investigating the scope of the copyright infringement cannot be considered damages arising from Defendants' alleged fraud. The Court agrees. In order to be actionable, fraud damages must come about from Plaintiff's *reliance* upon Defendant's misrepresentations. *Lazar*, 12 Cal. 4th 638. Here, there is no "but-for" causation between Plaintiff's *reliance* on Defendant's representations and Plaintiff's investigatory damages…Plaintiff did not rely on the factual assertions contained within Bindview's reports to their detriment. If anything, Plaintiff's investigation would indicate their non-reliance on Plaintiff's reports.

*Id.* at p. 6:1-10 (emphasis in original).

"The key question in assessing frivolousness is whether a [pleading] states an arguable claim - not whether the pleader is correct in his perception of the law." *Woodrum v. Woodward*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   *County, Okla.,* 866 F.2d 1121, 1127 (9th Cir. 1989).  Since the Motion to Dismiss the fraud claim

2   was meritorious, even if one of the arguments supporting it had been unfounded, sanctions could

3   not be appropriate.  *See Golden Eagle*, 801 F.2d at 1540-41 (fact that one argument or sub-

4   argument in support of an otherwise valid motion is unmeritorious "does not warrant a finding

5   that the motion or pleading is frivolous or that the Rule has been violated").  Here, although Judge

6   Jenkins found that *other reliance* had been alleged, he agreed that Plaintiff had not relied on the

7   data provided in the reports, and further concluded that Plaintiff had not alleged cognizable

8   damages.  Motion to Dismiss Order at 6:5-12.  Thus while the Court was not persuaded by

9   Defendants' argument that no reasonable reliance had been pleaded, that argument directly

10   informed Defendants' *successful* argument challenging Plaintiff's allegations that reliance had

11   caused damages.

12        Plaintiff's argument in favor of sanctions is not premised on the objective reasonableness

13   of Defendants' arguments as originally asserted, but instead attempts to take out of context a

14   single sentence in Judge Jenkins' order – that "Defendants mischaracterize Plaintiff's fraud

15   claims" – and transform it into the basis for sanctions.  *Id.* at 5:1.  Plaintiff's attempt to color the

16   Order with dictionary definitions of the word "mischaracterize" fails to transform Defendants'

17   legitimate and reasonable, though unsuccessful, prong of an otherwise successful motion into a

18   frivolous or improper pleading.  *See Partington v. Gedan*, 961 F.2d 852, 866 (9th Cir. 1992)

19   (District Court order denying sanctions sustained as "each 'misrepresentation' the defendants

20   made was in fact a legal argument they were entitled to make…The district court held further that

21   even if one or two defenses were inapplicable, sanctions were inappropriate because the Answer

22   as a whole was otherwise sound").

23        **2.**     **Neither The Questioning Of Discrepancies Found On The Face Of**

24                 **Plaintiff's Copyright Registration, Nor Arguments Premised On An Unsettled Area of Copyright Law, Are Frivolous Arguments Justifying**

25                 **The Imposition of Sanctions.**

26        The second and third "violations" identified in Plaintiff's Motion for Sanctions concern

27   other arguments made in Defendants' Motion to Dismiss, which concern Plaintiff's assertion that

28   it was damaged by refraining from filing suit.  Motion to Dismiss at 11:22-12:3.  Again, these

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   were among the many facts in the Complaint that Defendants believed – and continue to believe –

2   are inconsistent with Plaintiff's claim of reliance damages.  Among other things, Defendants

3   pointed to facts, as set forth in the Complaint, that indicated Plaintiff had not signed and

4   submitted a valid copyright registration application until December 7, 2005.  Complaint, Exh. A.

5   Defendants also pointed to 17 U.S.C. § 411(a), which provides that "no action for infringement of

6   the copyright in any United States work shall be instituted until pre-registration or registration of

7   the copyright claim has been made in accordance with this title."  Coupled with other facts

8   alleged in the Complaint, Defendants argued that Plaintiff's lack of a copyright registration before

9   December 7, 2005 was thus inconsistent with its conclusory allegation that it would have sued

10   earlier but for Defendants' alleged misrepresentation.[3]

11       Having dwelled on this issue for nine months, Plaintiff now argues that the argument in

12   support of Defendants' *successful* Motion to Dismiss the fraud claim is somehow grounds for

13   sanctions.  The crux of Plaintiff's argument appears to be that, because some courts permit a

14   copyright litigation to proceed on the basis of a valid *application* (rather than registration),

15   Defendants' reliance on § 411(a) for the opposite conclusion is not only incorrect, but so baseless

16   as to be sanctionable.  Plaintiff has it wrong, for several reasons.

17       *First*, there is strong legal support for the position Defendants took.  Although some

18   courts have allowed cases to proceed despite the plain language of § 411(a), there are compelling

19   authorities standing for the proposition that § 411(a) should mean what it says—that a registration

20   is required.  Indeed, at least three courts in the Northern District of California have held that

21   actual registration is a prerequisite to filing suit.  *See Brush Creek Media, Inc. v. Boujaklian*, 2002

22   U.S. Dist. LEXIS 15321, 2002 WL 1906620, *10-11 (N.D. Cal. 2002); *Ryan v. Carl Corp*., 1998

23   U.S. Dist. LEXIS 9012, 1998 WL 320817, *7-*8 (N.D. Cal. 1998); *Ashlar Inc. v. Structural*

24   *Dynamics Research Corp.*, 36 U.S.P.Q.2d 1402, *1405-1406 (N.D. Cal. 1995); *see also Loree*

25   *Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*, 315 F. Supp. 2d 1053, 1054-55 (C.D. Cal. 2004)

26

_____

[3] Defendants have propounded discovery related to the provenance of the copyright registration but Plaintiff has failed to produce them despite the Court's order to do so.  *See* Docket No. 79, Motion to Compel Order at 1:21-25; Docket No. 120, Motion to Enforce Order at 7:7-12.

28

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS          -13-                    C-06-0711-MJJ-WDB

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   (agreeing with Northern District cases that "plain language of the Copyright Act unambiguously

2   mandates the actual issuance of a registration certificate before a copyright action is brought.").

3   Based on such authorities, Defendants' position was appropriate.  Certainly, this is not an area of

4   law that is so settled as to render Defendants' argument frivolous.  *See Riverhead Sav. Bank v.*

5   *National Mortgage Equity Corp.*, 893 F.2d 1109, 1116 (9th Cir. 1990).

6       *Second*, as discussed above, the registration issue was only one of several arguments in

7   support of Defendants' *successful* Motion to Dismiss the fraud claim.  Thus, under *Golden Eagle*,

8   even if the argument were unjustified, it would not form an appropriate basis for the imposition of

9   sanctions.  *Golden Eagle*, 801 F.2d at 1540-41.  Since the Court determined that Plaintiff had

10  failed to plead a fraud claim, the Motion to Dismiss it was manifestly not frivolous nor filed for

11  any improper purpose.

12      *Third*, the issue of the copyright registration was not even discussed in the Court's Order.

13  This highlights the fact that this issue was peripheral to the primary arguments, and thus is not the

14  appropriate subject of a Rule 11 motion in the first place. Adv. Comm. Note to 1993 Amendment

15  to Rule 11; *Curto*, 248 F. Supp. at 142-143 (denying sanctions motion for "minor and non-

16  material factual inconsistencies").

17      *Fourth,* bringing a Rule 11 motion for this issue now is, in itself, a violation of Rule 11's

18  notice and safe harbor provisions.  As Plaintiff admits in its Motion, Defendants conceded in their

19  Reply that some courts have allowed cases to proceed, even where they were filed before

20  issuance of a registration.  Assuming *arguendo* that Defendants' copyright registration argument

21  was unjustified, it was clarified last year in Defendants Reply brief, and cannot support a

22  sanctions motion now.[4]

23      Plaintiff also accuses Defendants of mischaracterizing its copyright application, because

24  _____

25  [4] Plaintiff also asserts that the "right to sue" argument was "frivolous" because Plaintiff could have
    obtained an expedited copyright registration and sued earlier.  However, based on the Complaint, Plaintiff
    knew of the allegedly false statements in November 2005.  Complaint, ¶¶ 41-42.  The Complaint contains
26  no allegation that Plaintiff sought an expedited copyright registration at that time, or any time thereafter.
    On the contrary, the registration certificate attached to the Complaint was not signed until December 7,
    2005, and Plaintiff did not file suit until the last day in January, 2006, roughly two months after
27  discovering allegedly false statements in November 2005.  Given the state of the pleadings at the time
    Defendants filed their Motion to Dismiss, Defendants omission of the theoretical and unpleaded possibility
28  that Plaintiff could have sought an expedited registration is anything but frivolous.

DEFENDANTS' OPPOSITION TO                          -14-                         C-06-0711-MJJ-WDB
PLAINTIFF'S MOTION FOR SANCTIONS

1   the "effective date" identified on the registration certificate is in October 2005.  But as noted

2   above, the copyright application on which the registration is based was not even *signed* by

3   Plaintiff until December 2005.  Complaint, Exh. A.  According to the instructions for copyright

4   application Form TX – the form used by Plaintiff – "[t]he [copyright] application cannot be

5   accepted unless it bears the date and the *handwritten signature* of the author…or of the duly

6   authorized agent of author."  Wakefield Decl., ¶5, Exh. C.  Only once the application is accepted,

7   i.e., after the signature date, can the registrant receive the benefit of the application date as the

8   effective date of registration.  *Id.*  So failure to sign the application until December 2005 meant no

9   ability to sue until December 7, and, Defendants argued, no detrimental reliance.

10       Plaintiff argues that its effective date of registration is October 2005, even though that

11   date predates the completion date for its application.  Of course, as explained above, extensive

12   authority holds that no action can be filed before the actual registration is issued.  But even

13   assuming, *arguendo*, that a copyright holder may bring suit with a pending copyright application

14   based upon the effective registration date before the actual registration issues, it does not appear

15   from the face of the Copyright Registration that October 18, 2005 is properly the effective date of

16   Plaintiff's registration.  Despite ample opportunities to do so – and despite two Court orders

17   requiring Plaintiff to produce documents and communications relating to the registration –

18   Plaintiff has offered no explanation for the inconsistency between the registration's purported

19   effective date and the date the application was signed.  Certainly, Plaintiff has no basis for

20   seeking sanctions for Defendants' omission of information that Plaintiff possesses but has

21   withheld from discovery despite being ordered to produce it.

### 3.   Defendants' Arguments In Support of Their Unclean Hands Defense Are Not Sanctionable

24       Plaintiff further complains about arguments raised in the Opposition to Plaintiff's Motion

25   to Strike the unclean hands affirmative defense.  Opposition to Motion to Strike at 9:26-10:10.  In

26   the Opposition, Defendants *successfully* argued that their unclean hands defense was

27   appropriately stated under a notice pleading standard, not the heightened pleading standard that

28   Plaintiff incorrectly asserted should apply in its motion.  *Id.* at 8:1-20.  Ignoring the fact that

Fenwick & West LLP
Attorneys At Law
San Francisco

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Defendants prevailed on that motion, Plaintiff fixates on a minor point made in support of

2   Defendants' argument that they should be entitled to conduct discovery pertaining to this defense.

3          In the Opposition to the Motion to Strike, Defendants argued that the unclean hands

4   defense to Plaintiffs' fraud claim was supported by, *inter alia*, Netbula's own misrepresentations

5   in the course of its settlement negotiations with BindView.  Defendants also raised two apparent

6   inconsistencies pertaining to Plaintiff's Copyright Registration.  The first related to the

7   discrepancy between the December signature date on the application and the October effective

8   date of registration described in more detail above.  The second related to an apparent

9   discrepancy between Netbula's February 13, 1997 date of filing of incorporation documents with

10  the California Secretary of State (Wakefield Decl., ¶ 6) and the September 1, 1996 date of

11  authorship stated on the copyright registration.  Complaint, Exh. A.  Based on a review of the

12  California Secretary of State website, Defendants pointed out that "apparently" Netbula had not

13  qualified to do business until after the authorship date on its registration, and argued that they

14  should be able to conduct discovery relating to this and other issues pertaining to the unclean

15  hands defense.  It is only as to this last, minor point that Plaintiff now seeks the drastic measure of

16  Rule 11 sanctions.  Plaintiff argues that in fact, it was in business earlier, and that Defendants'

17  suggestion that the evidence may prove otherwise was "frivolous."

18         Following the filing of their Opposition to the Motion to Strike, Defendants subsequently

19  learned that, although Netbula registered in California in 1997, Netbula may have been in

20  business in Delaware at an earlier point.[5]  However, that subsequent discovery does not render the

21  Opposition to the Motion to Strike sanctionable, since reasonableness is judged at the time the

22  paper is submitted to the Court.  Moreover, this error was entirely innocuous and inconsequential

23  to the Court's decision to deny Plaintiff's baseless Motion to Strike the unclean hands defense.

24         Such minor errors are not sanctionable.  For instance, in *Burger v. Kuimelis*, 325 F. Supp.

25  2d 1026, 1032-1033 (N.D. Cal. 2004), Judge Walker denied a motion for Rule 11 sanctions

26  against counterclaimants who gave an inaccurate location for the counterdefendant's place of

27

28  [5] The results of Defendants' continued investigation indicates that Netbula had been incorporated in Delaware on July 24, 1996 two months before the date of authorship.  Wakefield Decl., ¶ 7, Exh. E.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS                    -16-                    C-06-0711-MJJ-WDB

business, though it had given the correct location in earlier filings.  In that case, the location of the business determined where an oral contract at issue was created.  Judge Walker found that the error was minor and "although this type of pleading error should be avoided, if possible" it did not demonstrate the absence of evidentiary support necessary to support sanctions.  *Id.* at 1033.

Further, in view of the fact that Defendants' Opposition brief was meritorious, any sub-arguments – particularly arguments related to such peripheral facts – cannot form a valid basis for a Rule 11 Motion.  *Golden Eagle*, 801 F.2d at 1540-41 (fact that one argument or sub-argument in support of an otherwise valid motion is unmeritorious does not warrant sanctions).  Moreover, if Plaintiff felt there was any factual inaccuracy in the Opposition regarding the date of incorporation, Plaintiff could have simply come forward with what it contends were the "true facts" in the Reply, or could have requested that Defendants' clarify the issue at the time. Tellingly, Plaintiff did neither.  *See generally* Docket No. 51, Reply in Support of Plaintiff's Motion to Strike.  As with the arguments supporting Defendants' Motion to Dismiss, if Plaintiff truly felt this was the sort of factual misrepresentation for which the Rule 11 sanctions were appropriate, it should have raised the issue then, pursuant to Rule 11's notice and safe harbor provisions.  Its failure to do so then underscores the trivial nature of the alleged "violation," and the impropriety of Plaintiff's Motion for Sanctions now.

### 4. Defendants' Good Faith Interpretation of Events Occurring During Settlement Talks Does Not Give Rise To Sanctions.

Plaintiff next complains about an alleged inaccuracy – contained in the parties' Joint Case Management Statement – concerning events at the parties' informal settlement meeting in May, 2006.  Once again, the representations about which Plaintiff now complains were entirely appropriate, and Plaintiff has no basis for seeking sanctions for them under any theory.

The representations at issue concerned the status of discovery and document production at the time of the parties' first case management conference.  Prior to that time, Defendants had asked Plaintiff – through counsel – to bring certain materials to a May 15, 2006 settlement meeting, and Plaintiff's counsel likewise requested that Defendants bring certain materials to the meeting.  Wakefield Decl., ¶ 8, Exh. F.  Defendants held up their end of the bargain and brought

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the requested documents.  However, Plaintiff did not bring the materials that Defendants had

requested – namely, documents showing royalty rates charged and revenue received by Plaintiff

for the relevant products over time, all license forms used by Plaintiff over time, and any

nonstandard license terms under which Plaintiff had licensed the relevant products – instead

choosing to bring a small selection of redacted sales documents.  Wakefield Decl., ¶¶ 9-10, Exh.

G.  Defendants pointed this fact out in the Joint Case Management Conference statement, stating:

> On May 15, 2006, BindView, Symantec (through their current outside
> counsel) and Netbula (through its former counsel) met to discuss a
> possible settlement of this matter.  The parties agreed to exchange
> categories of information pursuant to an NDA.  Symantec and BindView
> provided the materials requested of them, including information regarding
> the replacement of the allegedly infringing code contained in bv-
> CIS/HackerShield.  Netbula, on the other hand, did not provide any of the
> materials requested of them.

Plaintiff now claims that because it brought a handful of redacted, cherry-picked <u>samples</u>

of documents to the meeting, Defendants' characterization was inaccurate.  What Plaintiff

continually fails to acknowledge was that the request for licensing and revenue information called

for far more than the small number of redacted documents Plaintiff brought to the May 15

meeting.  Defendants have never said that Netbula did not bring any documents to the meeting.

Rather, they allege that Netbula did not produce the *requested* material.  Joint Statement at 4:22-

27; Wakefield Decl., ¶¶ 9-10.

In fact, Defendants made clear at the meeting and immediately thereafter that the

documents brought were inadequate, as they appeared to be only a subset of sales documents

selected by Plaintiff on an unknown basis.[6]  *Id.*  Plaintiff did not comply with Defendants'

requests at the May 15 meeting, and still had not provided all of the requested information.

While all of this has been thoroughly explained to Plaintiff and its current counsel,

Plaintiff insists on pursuing this baseless Motion for Sanctions (and therefore requiring this

unfortunately tedious response).  In doing so, Plaintiff itself mischaracterizes the record,

---

[6] As discussed below, now that Defendants have finally obtained additional invoices, it appears that
Plaintiff cherry picked sales documents showing a few instances where it obtained a $50 price, but that in
the majority of cases Plaintiff charged far less.  *See* Wakefield Decl., Exh. L.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS                   -18-                        C-06-0711-MJJ-WDB

1    advancing a distorted interpretation of a May 16, 2006 email sent between counsel.  *See* Motion

2    for Sanctions at 19:3-8.  In fact, that email requests documents that Plaintiff had *not* provided or

3    offered to provide at the prior day's meeting.  In the email, Defendants' counsel requested

4    Plaintiff's purchase orders and invoices, because "[b]ased on our conversation yesterday, it

5    appears that Netbula may have provided copies of ONC RPC and PowerRPC pursuant to

6    purchase orders, rather than license agreements." ONC RPC and PowerRPC are Plaintiff's

7    software products, and thus the reference to what Plaintiff "may have provided . . . pursuant to

8    purchase orders" unmistakably referred to *copies of products provided to customers*, not to copies

9    of documents Netbula had agreed – but failed – to bring to the meeting.  Wakefield Decl., Exh. G.

10        This was pointed out to Plaintiff repeatedly, in the Reply in support of the Defendants

11   motion to compel, and in the letter to Plaintiff's counsel concerning the current motion.  *See*

12   Docket 74 (Reply Declaration In Support of Motion to Compel), ¶¶ 24-26; Wakefield Decl.,

13   Exh. A.  Thus, Plaintiff cannot assert that it simply misunderstood the May 16 email.  Plaintiff's

14   reiteration of this clearly inaccurate interpretation – particularly in support of the very serious

15   accusation that Defendants are "trying to mislead the court" (Motion for Sanctions at 20:4-5) is

16   indefensible.[7]

17        In all events, the characterization of the May 15 settlement meeting was in a *joint*

18   submission to the Court.  Plaintiff's counsel failed to revise that portion of the Joint Statement or

19   include its own interpretation in Plaintiff's disputed facts section.  Wakefield Decl., ¶¶ 11-14,

20   Exhs. I-J.  In fact, Plaintiff's counsel participated in several rounds of revision with counsel for

21   Defendants.  *Id.*  Plaintiff's attorneys commented and revised other portions of the statement, but

22   said nothing about the language in question.  *Id.*  At no point before the statement was filed did

23   Plaintiff complain or raise any concerns regarding the characterization of the settlement meeting.

24   Thus, Plaintiff is seeking sanctions for a filing that *Plaintiff's former counsel signed and*

25   _____

26   [7] Strikingly, the categories of documents requested in the May 16, 2006 email, and subsequently requested
     in formal document requests, were not produced until after Defendants were forced to bring a motion to
27   compel.  *See* Motion to Compel Order at 1:21-25.  Even now, additional documents within those
     categories have not been produced and were addressed in the Court's recent Motion to Enforce Order
     6:25-7:2.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*authorized nearly six months ago.* If any error existed in the content of the case management statement, Plaintiff's proper remedy would have been to ask Defendants to withdraw or revise the language – not to wait 6 months to pursue Rule 11 sanctions. *Wills v. Terhune*, No. C 99-2288, 1999 U.S. Dist. LEXIS 17346, *6 (N.D. Cal. Nov. 4, 1999) (plaintiff suffered no injury when denied the opportunity to file a Rule 11 motion premised on erroneous statements made in a case management statement, as correct remedy would have been to submit "to the court a case management conference statement in which he corrected defendants' erroneous statement").

**5.    Defendants' Claim that Plaintiff Has Exaggerated Its Pricing Was Well Supported When Made, and Has Been Further Supported By Discovery**

Finally, Plaintiff complains about an allegation Defendants made on information and belief concerning Plaintiff's pricing. This representation was made in support of Defendants' fraud affirmative defense to Plaintiff's claim that Defendants breached an oral agreement to pay royalties reached during settlement discussion. That defense asserts, *inter alia*, that, if Plaintiff ever elicited an actionable agreement to pay royalties of $50 per copy, as Plaintiff claimed, it was by exaggerating the actual prices it claimed to have charged customers for the software in question, in the hope of inducing Defendants to agree to pay unreasonable fees to resolve this case.[8] *See* Second Amended Answer, ¶¶ 105-109. In support of that Defense, Defendants allege that they "are informed and believe that in the year 2000 the standard list price for Netbula's RPC software was less than $6.00 per copy . . ." *Id.* at ¶ 106.

Plaintiff now seeks sanctions for this assertion, arguing that it was baseless and made "without reasonable inquiry." In fact, that representation was entirely reasonable, and was based on a review of a Netbula license agreement from the year 2000 that specifically identified Plaintiff's "list price" as $5995 per 1000 copies. Wakefield Decl., ¶ 15, Exh. K.[9] Moreover, the

---

[8] Throughout this litigation, Plaintiff has repeatedly asserted that its distribution licenses for the software in question were $50 per copy. See, e.g., FAC at ¶¶ 36, 78, 80; Motion for Sanctions at 6:8-9. In its claim for breach of contract, Plaintiff further alleges it entered into an oral agreement with BindView in which BindView agreed to "abide by Netbula's standard license agreement (which included a $50 per copy license fee as of approximately the year 2000) . . ." FAC at ¶ 78.

[9] Plaintiff's software is marketed to software developers. Plaintiff licenses an "SDK" or "software developer's kit" program, and separately grants "distribution licenses" allowing developers to distribute its software. The StorageTek license agreement noted in Plaintiff's Motion for Sanctions identified a one-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

recent productions of Plaintiff's licensing documents, though still incomplete, and provided only after two orders compelling production, only confirms Defendants' original claim that Plaintiff's $50 per copy price claim was inflated.  *Id.* at ¶ 17, Exh. L.   Although Defendants' allegations regarding pricing were made on information and belief, as of this point in the litigation there is ample support for the accuracy of the allegation that Plaintiff significantly overstated its pricing.[10]

Ignoring the evidence from its own documents, Plaintiff persists in advancing a series of unsupported and unavailing arguments in support of its assertion that Defendants' representations were "frivolous."  First, Plaintiff argues that the license agreement reflecting the $5995 per 1000 copy price was "not a standard agreement."  Motion for Sanctions at 21:15-17.  Plaintiff offers no evidence to support this position and still has not completed production of documents relating to licensing and pricing information.  Nor does Plaintiff explain how Defendants were supposed to know that this contractual "list price" was not standard, particularly when Plaintiff was withholding its sales and licensing documents.  The 2000 agreement states on its face that the "List price is $5995 per 1000."  Wakefield Decl., Exh. K.  Despite Plaintiff's suggestion that this was non-standard, special discount price, the Agreement also states that the $5995 price reflects a "0%" discount.  *Id.*

Second, Plaintiff argues that the price "was $5995 per 1000 copy, not $6.00 per copy." *Id.*, 21:18-20.  The fact that Defendants rounded the per-unit price of $5.995 up, *in Plaintiff's favor*, is hardly a basis for imposing sanctions.  As for Plaintiff's claim that "Defense Counsel had seen purchase orders evidencing a $50 price," Plaintiff again offers nothing but argument.  *Id.* at 21:20-22.  But in any event, the fact that Plaintiff may have induced a handful of customers to pay a higher price does not support a conclusion that Plaintiff's true "standard license agreement" price – the alleged price referenced in the First Amended Complaint that BindView supposedly

_____

time license fee of $895 for Plaintiff's SDK product, which if divided amongst and added to the per copy price for 1000 copies of Plaintiff's software to be distributed, brings the average price per copy distributed to $6.89. Wakefield Decl., Exh. K.  Since agreements provide for fixed payments based on 1000 copies at a time, Defendants calculated this per unit "list price" as a point of comparison to Plaintiff's fraudulent claim that its unit price was $50.  *Id.* at ¶ 15.

[10] Tellingly, Plaintiff has still refused to answer Interrogatory No. 3 regarding its unit sales and revenue information, from which a true "average" prices could be discerned.  Wakefield Decl., ¶ 18, Exh. M. Plaintiff's ongoing defiance of the Court's order requiring it to provide its licensing information only supports Defendants' belief that Plaintiff has consistently exaggerated its actual prices.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    agreed to pay –was anywhere near $50.

2          Plaintiff's unsupported argument that it "sent BindView a license agreement *template*

3    which quoted a price of $19,995 for a 1000-unit pack" (or $20 per copy) is equally meaningless.

4    This communication was in the same time frame that Plaintiff made its fraudulent statement to

5    Defendants that Plaintiff's "standard license agreement" price was $50 per copy.  The fact that

6    Plaintiff created a license agreement "template" as part of its efforts to extract unreasonable

7    payments from BindView, in which it proposed a $20 price, does not render Plaintiff's $50 price

8    claim true, and certainly does not make any of Defendants' representations sanctionable.

9          Rule 11 motions should not be prepared "to emphasize the merits of a party's position" or

10   to "intimidate an adversary into withdrawing contentions that are fairly debatable."  Adv. Comm.

11   Note to 1993 Amendment to Rule 11.  In the end, this is a factual dispute, and Defendants'

12   contentions are more than "debatable" – they are well supported.  Plaintiff's desire to argue the

13   point does not convert a legitimate dispute into a basis for sanctions.  Nor should it have ever

14   required Defendants to prepare this detailed refutation.

15   **IV.    CONCLUSION**

16         For the foregoing reasons, Defendants respectfully requests that Court enter an order

17   denying Plaintiff's Motion for Sanctions, grant Defendants' their attorneys fees and cost

18   associated with defending this motion, and for such other and further relief as the court deems

19   appropriate under the circumstances.

20                                          Respectfully,

21   Dated: May 16, 2007                    FENWICK & WEST LLP

22

23                                          By:_____/S/_____
                                                      Laurence F. Pulgram
24
                                            Attorneys for Defendants
25                                          BINDVIEW DEVELOPMENT
                                            CORPORATION, SYMANTEC
26                                          CORPORATION, and ERIC J. PULASKI

27

28