1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   NETBULA, LLC,                          No. C06-00711 MJJ

12              Plaintiff,                   **ORDER DENYING PLAINTIFF'S
                                             MOTION FOR LEAVE TO FILE**
13      v.                                   **SECOND AMENDED COMPLAINT**

14    Bindview DEVELOPMENT CORPORATION
     ET AL,

15              Defendant.

16   _____/

17

18                            **INTRODUCTION**

19         Before the Court is Plaintiff Netbula, LLC's ("Plaintiff" or "Netbula") Motion for Leave to

20   File Second Amended Complaint.[1]  Defendants Bindview Development Corporation ("Bindview"),

21   Symantec Corporation ("Symantec"), and Eric J. Pulaski ("Pulaski"), (collectively, "Defendants")

22   oppose the motion.  For the following reasons, the Court **DENIES** Plaintiff's Motion for Leave to

23   File Second Amended Complaint.

24                         **FACTUAL BACKGROUND**

25   **I.      Overview of the Action**

26         The current copyright action arises from a dispute concerning certain computer software

27   code.  In late September 2005, Bindview discovered some code possibly belonging to Netbula in one

28   of Bindview's products, bv-Control for Internet Security ("bv-CIS," formerly known as

_____

[1]Docket No. 207.

**United States District Court**
For the Northern District of California

"HackerShield").  Bindview discovered the code during the course of its diligence prior to Bindview being purchased by another company, Symantec.  Bindview had acquired the HackerShield product by virtue of its acquisition of another company, Netect, Inc. ("Netect") in 1999.

Bindview subsequently approached, Netbula, to determine whether Netect had entered into a license agreement with Netbula and to acquire any additional licenses as necessary.  Netbula responded that Netect had purchased two licenses in July 1998, but that it was unable to locate the license agreements.  At that time, the parties were not able to settle or otherwise reach a licensing agreement for the alleged infringing code.

In the meantime, Bindview claims it suspended distributions of the bv-CIS product.  According to Bindview, it replaced the allegedly infringing code – which was a modification of an open source piece of software originally created by Sun Microsystems – with a free, open-source, publicly available replacement, a process that was completed by December 2005.  Shortly thereafter Symantec acquired then Bindview in a reverse triangular merger effective on January 6, 2006. Bindview claims that at the time Symantec acquired Bindview, Bindview had already removed the code in question from the bv-CIS product.  The current lawsuit followed.

On January 31, 2006, Netbula initiated this lawsuit against Bindview, Symantec, and Bindview's former CEO, Pulaski.  In its original complaint, Netbula alleged claims for copyright infringement, as well as intentional fraud, breach of contract, and statutory unfair competition. Following the filing of the Complaint, on or about May 15, 2006, the parties met to discuss the possibility of settlement.  At that meeting, Defendants provided Netbula and its counsel with, among other things, sales information for bv-CIS (formerly known as "HackerShield"), including the unredacted names of customers who purchased the products.  (Wakefield Decl. ¶ 2, Ex. 1.) According to Defendants, to date, Plaintiff has not attempted to add any of the identified customers as a defendant in this action, nor has Plaintiff attempted any discovery from or about those customers.  (*Id*.)

**II.    Overview of Discovery**

The parties have contentiously litigated nearly every stage of discovery before Magistrate Judge Brazil.  The parties continue to accuse each other of inexcusable delay and failure to comply

United States District Court

For the Northern District of California

with discovery rules.  With respect to the issues now before the Court, the most pertinent of those alleged delays pertains to the production of the code at issue.  A summary of the parties' respective positions on source code production are as follows.

### A.    Defendants' Position

With respect to source code production, Defendants claim to have made repeated attempts over an eight month span to finalize the form and encryption of the parties' respective source code so that both parties could produce their respective code, including the Defendants' code that is at issue in Plaintiff's new proposed claim.

According to Defendants, beginning on October 12, 2006, Defendants' counsel wrote to Darrel Salomon, Plaintiff's then counsel, with a proposal regarding the production of source code. Defendants suggested that source and object code "should [be produced] in its native electronic form.  Each party should agree that source code will be kept in an encrypted format, and when sending it to an expert, the media containing the code will be encrypted and the decryption key will be sent separately."  (Wakefield Decl. ¶ 4, Exh. 3.)  A month later, after receiving no response to their request, Defendants again forwarded the proposal to Plaintiff.  (*Id*., Exh. 4.)  Defendants contend that as of November 30, 2006, Plaintiff continued to ignore Defendants' concerns about the protection of its source code.  (*Id*., Exh. 5.)

After Plaintiff substituted in new counsel, Defendants raised the issue of source code encryption with that new counsel, Ms. Vonnah Brillet, in a series of emails on February 9, 2007 and again in a February 13, 2007 email.  (*Id*. ¶ 6, Exhs. 7 & 8.)  With the issue still unresolved, Defendants again wrote to Ms. Brillet on March 30, 2007 that Bindview was preparing its source code for production assuming that Plaintiff would agree to stipulate to basic measures to ensure the code remained encrypted and otherwise safe from unauthorized access.  (*Id*. ¶ 6, Exh. 9.)

On May 7, 2007, after seven months of Defendants' requests for agreement regarding the protection and production of the parties' source code, Magistrate Judge Brazil ordered Plaintiff to either sign Defendants' proposed source code stipulation or provide a meaningful objection to Defendants' proposal.  (Docket No. 120, p. 5:18-20) ("The parties must follow Mr. Wakefield's proposal for encrypting and protecting source code, unless Plaintiff can articulate a principled

objection, and identify an efficient and effective alternative"). Judge Brazil's May 7, 2007 Order also set May 25, 2007 as the date for the parties to exchange their respective source codes. In the weeks after the Court issued its order, Defendants raised the issue of the outstanding stipulation repeatedly, without success. (Wakefield Decl. ¶ 7.) It was not until the final day for the parties to produce source code that Plaintiff authorized the filing of the stipulation, which Defendants subsequently filed. (Docket No. 141.) Defendants subsequently produced the code. (Wakefield Decl. ¶ 7.)

**B.     Plaintiff's Position**

Although Plaintiff offers no declaration or supporting evidence, Plaintiff attributes the delay in source code production on Defendants. In its Opposition brief, Plaintiff claims that it served document requests for source code and installable copies of the allegedly infringing software on December 11, 2006, and that it was not until May 25, 2007, after being ordered to do so, when Defendants actually produced the source code.

Furthermore, Plaintiff contends that Defendants altered the produced software code in an apparent attempt to conceal infringement. According to Plaintiff, Defendant altered Plaintiff's code and masqueraded the altered code as their own. In its brief, Plaintiff claims to have notified Defendant of the altered software and its intent to amend the complaint accordingly, on June 4, 2007 and June 11, 2007, respectively.

Plaintiff also claims to have notified Defendants of its intent to potentially add additional third-party Defendants who purchased the allegedly infringing source code from Defendants. Plaintiff contends it has been unable to add additional third-party Defendants because Defendants failed to sufficiently identify the third party purchasers.

Plaintiff now seeks leave to file a Second Amended Complaint making a number of amendments. Plaintiff's proposed Second Amendment Complaint seeks to: (1) increase the number of Doe Defendants from 1-600 to 1-1000; (2) assert a new claim for relief under 17 U.S.C. § 1202 arising from Defendants' alleged alteration of Plaintiff's software; (3) assert a new claim for copyright infringement related to the binary program module file "pwrpc32.dil"; (4) eliminate Plaintiff's alleged fraud damages—which Plaintiff had already ceded during the Court's June 22,

United States District Court
For the Northern District of California

2007 discovery hearing, and (5) make "other minor changes."[2]  Defendants oppose the motion on grounds of undue delay, bad faith, and prejudice.

**PROCEDURAL BACKGROUND**

On May 18, 2007, this Court considered the parties' Request to Extend Dates for Discovery, Dispositive Motions, and Trial.  The Court set the following dates: (1) Discovery Cut-Off on June 26, 2007; (2) Parties to Name Experts by June 25, 2006; (3) Expert Reports to be Tendered by July 9, 2007; (4) Designation of Supplemental/Rebuttal Experts by July 16, 2007; (5) Expert Discovery Cut-Off by July 30, 2007; (6) Supplemental/Rebuttal Reports by July 23, 2007; (7) Dispositive Motions to be heard by August 21, 2007; (8) Pre-Trial Conference on September 25, 2007; (9) Trial on October 1, 2007.

**LEGAL STANDARD**

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend a pleading once as a matter of course before a responsive pleading is served, after that the party may amend the pleading only by leave of court or by written consent of the adverse party.  Additionally, Rule 15(a) instructs the Court that, "leave shall be freely granted when justice so requires."  The Supreme Court has made it clear that courts are to carefully heed this mandate.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  In determining whether to grant leave to amend, the Court considers the following factors: (1) whether the movant unduly delayed in bringing the motion, (2) evidence of

---

[2]A comparison of Plaintiff's Amended Complaint and the proposed Second Amended Complaint reveals that Plaintiff's putative "other minor changes," are new allegations about supposed license restrictions, the scope of Plaintiff's software, and the events constituting Defendants' supposed fraud.  In particular, Plaintiff wants to add new allegations that Plaintiff's license terms prohibit the use of certain files outside of software development and restrict the number of people who use a computer installed with Plaintiff's software. (Proposed Second Amended Compl., at 6:4-6 (¶ 14); 8:2-3 (¶ 18); 25:7-10 (¶ 56) (now alleging that only one programmer could use a copy of Netbula's software).  Plaintiff also wants to recharacterize the licenses at issue in this case, newly describing multiple-quantity licenses and pricing.  (*Id.* at 6:22-26 (¶ 15).)  Plaintiff also wants an amendment that changes the description of how the RPC technology underlying the Plaintiff's software functions and an amendment listing additional files that Plaintiff considers the "most important" part of its software. (*Id.* at 4:18-19 (¶ 10); 5:1-4 (¶ 12) (listing, for the first time, powerrpc.h, pwrpcapi.h, pwrpc32.lib, and powerrpc.exe).)

Plaintiff also seeks to amend what the parties allegedly represented to one another during the period of supposed fraud, which purportedly was hatched when the parties were trying to settle their dispute informally.  For example, Plaintiff wants to add, "Mr. Yue further informed Bindview that: (1) the license Netect purchased was not transferable; and (2) the 1000-pak license must be pre-paid and since Bindview did not pre-pay, it was not entitled to purchase in 1000-paks."  (Id. at 15:23-25 (¶ 32); 17:18-19 (¶ 36) (adding that "Netbula had previously informed Bindview that Bindview was not qualified for pre-paid bulk license paks")).  Lastly, Plaintiff seeks to add statements supposedly made by Defendants and relied on by Plaintiff.  (*Id*. at 15:16-20 (¶ 32).)

United States District Court

For the Northern District of California

bad faith or dilatory motive on the part of the movant; (3) the movant's repeated failure to cure deficiencies by previous amendments; (4) prejudice to the opposing party; and (5) futility of amendment. *Id.* Generally, the court engages in this analysis with all inferences in favor of granting the motion. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). While each of these factors is relevant to determining the propriety of leave to amend, the crucial factor is the resulting prejudice to the opposing party. *Howey v. Radio Corp. of Am.*, 481 F.2d 1187, 1190 (9th Cir. 1973). "Absent prejudice, or a strong showing of any of the remaining factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Thus, if the party opposing the motion fails to establish any of these factors, "the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182.

However, leave to file an amended cause of action should not be granted "when the movant present[s] no new facts but only 'new theories' and 'provide[s] no satisfactory explanation for [its] failure to fully develop [its] contentions originally.'" *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (citation omitted). Additionally, a court's discretion to deny leave to amend is particularly broad where, the plaintiff has already had an opportunity to amend the complaint. *Fidelity Financial Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1438 (9th Cir. 1986).

## ANALYSIS

A review of the applicable factors, on this record, reveals that Plaintiff's undue delay in seeking amendment would result in unfair prejudice to Defendants at this late stage in the litigation.

## I.   Prejudice to Defendants

Prejudice is the most crucial factor in determining whether to grant leave to amend. *Howey*, 481 F.2d at 1190. Prejudice is heightened when a Plaintiff seeks to amend a complaint late in litigation. *See Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989). Such prejudice may result when the new allegations add claims based on different legal theories or require proof of different facts. *See, e.g., Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387-88 (9th Cir. 1990) (affirming denial of leave to add claims based on different legal theories and requiring proof of different facts). Other courts have found intolerable prejudice when plaintiffs have sought to add

defendants a month before the close of discovery when nearly all pre-trial work was complete. *See, e.g., Acosta-Mestre v. Hilton Intern. of Puerto Rico*, 156 F.3d 49, 52-53 (1st Cir. 1998) (reasoning that the current defendant would be prejudiced by additional discovery and postponement of trial because defendant might have to alter strategy and tactics to deal with theories involving the new defendants); *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993) (noting that increased complexity would have resulted if leave to amend to add new claims had been granted); *Callan v. Amdahl Corp*., Civ. No. C-94-0295, 1995 U.S. Dist. LEXIS 5684, *13-*15 (N.D. Cal. Apr. 24, 1995) (denying leave to amend "fourteen months after plaintiff first filed his complaint, only two weeks before the discovery cut-off and two months before trial," even though "plaintiff complains he could not file his proposed amended complaint until he had received certain discovery from defendants").

On the current record to allow Plaintiff to file a Second Amended Complaint would unduly prejudice Defendants.  Plaintiff's proposed amendments come after the close of discovery and involve adding an additional 400 unnamed Doe defendants, asserting two new claims, and alleging a number of factual allegations.  In this case, the Court made it clear at the May 18, 2007 Status Conference that the trial date is October 1, 2007.  Granting leave at this late stage, would require Defendants to attempt to prepare new defenses involving new issues and new Defendants in an unreasonably short period between now and the current trial date.

Regarding Plaintiff's proposed addition of new third-party Defendants, it is relevant to the Court's analysis that Plaintiff has known the identities of Defendants' customers and what they licensed from BindView for well over a year, yet has refused to state, even at this late date, exactly whom it is suing or what theory of liability it is asserting against the various newly proposed defendants.  (Wakefield Decl. ¶ 2, Exh. 1.)  Plaintiff attributes its failure to earlier identify the new parties on Defendants' refusal to adequately identify its customers.  However, the Court finds this excuse unavailing because the list provided by Defendants contained adequate information for Plaintiff to further investigate the identities of any potential third party customer Defendants.

Regarding Plaintiff's proposed addition of the new claims, predicated in part on the code produced by Defendants on May 25, 2007, the Court similarly finds Plaintiff's request unavailing.

United States District Court

For the Northern District of California

7

United States District Court

For the Northern District of California

1   Again, Plaintiff attempts to attribute its failure to earlier amend on Defendants.  However, the Court

2   finds this excuse similarly unavailing.  A review of the record reveals that it was Plaintiff who

3   delayed Defendants from producing the code as early as October 2006.  (*See* Docket No. 120, Order,

4   May 7, 2007) (stating, "[t]he parties must follow [Defendants'] proposal for encrypting and

5   protecting source code, unless Plaintiff can articulate a principled objection, and identify an efficient

6   and effective alternative")).  The May 7, 2007 Order set May 25, 2007 as the date for the parties to

7   exchange their respective source code, and came seven months after Defendants' initial requests for

8   agreement regarding the protection and production of the parties' source code.  Moreover, it was not

9   until the final day for the parties to produce source code that Plaintiff authorized the filing of the

10  stipulation, which Defendants subsequently filed.  (Docket No. 141.)

11      Also important in the Court's analysis is that defending against Plaintiff's new claims would

12  require Defendants to investigate, among other things, precisely what material was present in the

13  new code in question, the genesis of that information, whether it was removed, the knowledge and

14  intent of those that allegedly removed it, and the magnitude of any resulting damages.  This

15  investigation introduces not only new areas of factual and legal investigation but also the likely need

16  for expert opinion.  While Plaintiff claims it does not need to take additional discovery for its new

17  claims, it does not follow that Defendants should be forced to proceed in their defense without the

18  benefit of discovery into these allegations, expert preparation, and motions for summary judgment to

19  exclude these claims from trial.

20      For these reasons, the Court finds that allowing Plaintiff to file a Second Amended

21  Complaint would unduly prejudice Defendants at this late stage of the litigation.

22  **II.      Plaintiff's Undue Delay**

23      A second factor in determining whether the district court properly denied the motion for

24  leave to amend is whether Plaintiff unduly delayed in filing its motion.  *See, e.g., Parker v. Joe*

25  *Lujan Enters., Inc.*, 848 F.2d 118, 121 (9th Cir. 1988) (affirming district court's denial of motion to

26  amend in part on ground of undue delay).  Relevant to evaluating the delay issue is whether the

27  moving party knew or should have known the facts and theories raised by the amendment in the

28  original pleading.  *E.g., E.E.O.C. v. Boeing Co.*, 843 F.2d 1213, 1222 (9th Cir. 1988); *Jordan v.*

*County of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir.), *vacated on other grounds*, 459 U.S. 810 (1982).

The current record evinces that Plaintiff's new factual allegations consist of information that have long been within Plaintiff's control.  (Proposed Second Amended Compl., at 6:4-6 (¶ 14); 8:2-3 (¶ 18); 25:7-10 (¶ 56) (alleging that only one programmer could use a copy of Netbula's software); 8:19-21 (¶ 19); 12:5-10 (¶ 24) (alleging that, despite not having any copy of the license agreement between Netect and Netbula, that Defendants obtained not "an individual SDK license and/or individual runtime license," but rather merely "one SDK license"); 6:22-26 (¶ 15) (recharacterizing the licenses at issue, newly describing multiple-quantity licenses and pricing); 4:18-19 (¶ 10); 5:1-4 (¶ 12) (listing, for the first time, powerrpc.h, pwrpcapi.h, pwrpc32.lib, and powerrpc.exe).  Because Plaintiff has failed to explain why it could not have alleged these facts earlier—and allow Defendants to conduct proper discovery—the Court finds Plaintiff's request to now add them to the complaint to be unsupported.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Leave to File Second Amended Complaint.

**IT IS SO ORDERED.**

Dated: August _1_, 2007

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

9